Farmers Union Cooperative Exchange v. Commissioner.
Farmers Union Coop. Exch. v. Commissioner
Docket No. 934.
United States Tax Court
1944 Tax Ct. Memo LEXIS 29; 3 T.C.M. (CCH) 1258; T.C.M. (RIA) 44384; November 29, 1944
*29 Ernest F. Smith, Esq., for the petitioner. Stanley B. Anderson, Esq., for the respondent. TURNER
Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent has determined a deficiency in income tax against the petitioner of $104.44 for the fiscal year ended April 30, 1941, and a deficiency in excess profits tax for the same period of $46.02. The petitioner claims that it has made an overpayment of income tax for the said year of $187.88. The only question is whether petitioner is entitled to deduct or exclude from income $1,820.56, representing patronage dividends on business done during that year with non-members. Findings of Fact The petitioner is a corporation, with its principal office at Red Rock, Oklahoma. It was organized under the "Cooperative Marketing Association Act", of the Statutes of Oklahoma. The petitioner's authorized capital is $50,000, divided into 500 shares of $100 par value each. No stockholder is allowed to own more than five shares of stock. Any person owning one or more shares of stock is thereby deemed to be a member of the association. Membership is limited to producers of certain agricultural products, particularly wheat, who carry on their *30 farming operations in the territory tributary to the shipping points of the association. Irrespective of the number of shares of stock owned, each stockholder is entitled to only one vote at stockholders' meetings. The petitioner's by-laws provide that the affairs of the association are to be managed by a board of directors, consisting of five members elected from among the stockholders. They also provide that the association must operate for the mutual benefit of its members and that it shall not deal in the products of non-members to an amount greater "than such as are handled by it for members." The use and disposition of the earnings of the association are governed by the provisions of Article VI of the by-laws, which reads as follows: "ARTICLE VI Apportionment of Earnings "Section 1. The Directors, subject to revision by the Stockholders in meeting, shall apportion the net earnings at least once each year. Not less than ten per cent (10%) of the net earnings, accruing since the last disbursement shall be set aside in a reserve fund until such reserve fund shall equal the amount of the paid up capital stock. "Section 2. Dividends at a rate not to exceed eight per cent (8%) *31 may be paid upon the paid up capital stock. "Section 3. Five per cent (5%) of the net earnings may be set aside for educational purposes to be used at the discretion of the Directors. "Section 4. The remainder of such net earnings shall be apportioned as the Board of Directors may direct, in conformity with the 1937 Cooperative Law of the State, known as the "Cooperative Marketing Association Act'." It has been the practice of the petitioner to pay 6 percent on its capital stock, and that was the amount paid in the taxable year. It did not in the taxable year, nor in any other year, set aside or accumulate any amount from its net earnings as the reserve required by section 1 of the above article, and it has never established an educational fund, as authorized by section 3. After payment of 6 percent on its capital stock, the petitioner has regularly allocated the remainder of its net earnings to its patrons, members and non-members, according to the business done with each. In the case of members, the patronage dividends have been regularly paid, while in the case of non-members, the amount of patronage dividends allocated to each has been credited to such non-member on petitioner's *32 books and the non-member patron has been notified of such credit. The non-member has been notified further that when the total of such credits equals $100, a share of petitioner's stock will be issued therefor and that the non-member will thereby become a member of the association. If the non-member moves from the territory in which the petitioner operates before his credits amount to $100, it is the practice of the petitioner, on application therefor, to pay in cash the amount of such credits. For the taxable year ended April 30, 1941, patronage dividends actually paid to members of the petitioner amounted to $4,181.82. During the same period, patronage dividends credited to non-members in the manner described above amounted to $1,820.56. Opinion The petitioner makes no claim that it is exempt from tax, but does claim that in determining net income, it is entitled to deduct from gross income the patronage dividends credited by it on its books to non-members, on the basis of business done with such non-members during the taxable year. The respondent agrees to the exclusion or deduction from petitioner's gross income of the patronage dividends actually paid to members, but does *33 not agree that the patronage dividends credited to non-members on the petitioner's books, but not actually paid, are to be excluded or deducted in determining net income. The petitioner was organized under the Cooperative Marketing Association Act of the State of Oklahoma, now found in sections 361 through 361 y, Title 2, of Oklahoma Statutes, 1941, and in allocating and distributing its earnings, the petitioner is subject to the requirements of section 361 of that act. [1] In subsection (c) of that section, it is provided that an association "shall limit the interest it pays on membership capital or stock to an amount not greater than eight (8) per cent per annum," but that no apportionment shall be made "until not less than ten (10) per cent of any undistributed balance * * * has been set aside in a surplus or reserve fund unless such surplus or reserve funds equal at least one hundred (100) per cent of the paid up membership fees or capital stock." In subsection (d), it is provided that undistributed balances "in excess of additions to reserves and surplus, shall be distributed on the basis of patronage," but that such distribution "may be restricted to members or be made at the *34 same rate for members and non-members." It is further provided that the by-laws of the association "may provide that any distribution to a non-member, eligible for membership may be credited to such non-member until the amount thereof equals the value of a membership certificate or a share of the association's common stock," but that such "distribution credited to the account of a non-member shall revert to the reserve fund to be used for educational purposes if, after two years, the amount is less than the value of a membership certificate or a share of common stock." *35 It is to be noted from the facts that, under section 1, Article VI of the petitioner's by-laws, and as required by the above statute, it is mandatory that not less than 10 percent of the petitioner's net earnings "shall be set aside in a reserve fund until such reserve fund shall equal the amount of the paid up capital stock," but that the $1,820.56 here in question was credited by the petitioner on its books to non-members, from the petitioner's net earnings, without a prior crediting of any part of the net earnings to a capital reserve. It is noted also that there is no by-law which requires any allocation and distribution of petitioner's net earnings to non-members by credit or otherwise. By section 4 of Article VI of the by-laws, the allocation of net earnings is left within the discretion of the petitioner's directors so long as they conform their actions to the requirements of the Oklahoma Statute. Inasmuch, therefore, as there was no actual payment of patronage dividends to non-members in the taxable year and, under the statute and the by-laws, it was within the discretion of the directors to restrict the distribution of earnings to members, to the exclusion of non-members, *36 and a part, at least, of the amounts credited to non-members as patronage dividends was credited in direct violation of the provisions of both the Oklahoma Statute and the petitioner's by-laws, we find no basis in law or in fact for allowing the deduction of patronage dividends credited to non-members, but not paid, in determining the petitioner's net income, or for excluding such credits from gross income. It was still within the power of the petitioner to pay or to withhold from the non-members the patronage dividends credited to them. The claim of the petitioner is accordingly denied. See and compare Gallatin Farmers Co. v. Commissioner, 132 F.2d 706; Co-operative Oil Association, Inc. v. Commissioner, 115 F.2d 666; and United Cooperatives, Inc., 4 T.C. 93. We have no question here with respect to any patronage dividends which may have been actually paid to non-members during the taxable year, and express no opinion with respect thereto. Decision will be entered under Rule 50. Footnotes
1. Sec. 361.1. Financial statements - Dividends and earnings - Interest on membership capital or stock - Surplus or reserve fund - Undistributed balances. - * * * (b) Dividends and Earnings. The directors, subject to the revision by the members or stockholders, at any general or special meeting lawfully called shall apportion the net earnings thereof from time to time at least once in each year. (c) An association shall limit the interest it pays on membership capital or stock to an amount not greater than eight (8) per cent per annum. Such apportionment shall not be made until not less than ten (10) per cent of any undistributed balance accruing since the last apportionment, has been set aside in a surplus or reserve fund unless such surplus or reserve funds equal at least one hundred (100) per cent of the paid up membership fees or capital stock. (d) Undistributed balances from any source, in excess of additions to reserves and surplus, shall be distributed on the basis of patronage, that is according to the amount or value, as the association may decide, of the products sold to or through, and/or purchased from or through, the association by its patrons. The distribution of such balances may be restricted to members or be made at the same rate for members and non-members. The by-laws may provide that any distribution to a non-member, eligible for membership may be credited to such non-member until the amount thereof equals the value of a membership certificate or a share of the association's common stock. Such a distribution credited to the account of a non-member shall revert to the reserve fund to be used for educational purposes if, after two years, the amount is less than the value of a membership certificate or a share of common stock, or in case said person does not accept and exercise his membership privileges. * * *↩