## GALLATIN FARMERS CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10164.

Circuit Court of Appeals, Ninth Circuit.

Dec. 31, 1942.

J. M. Stotesbury and Norma E. Skarsten, both of San Francisco, Cal., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, A. F. Prescott, and Mamie S. Price, Sp. Assts. to Atty. Gen., for respondent.

Before WILBUR, DENMAN and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

Petitioner, a farmers' cooperative corporation created under Chapter 38 of the Revised Codes of Montana, seeks a review of a decision and order of the Tax Court of the United States disallowing deductions (a) from petitioner's income for the calendar tax years 1938 and 1939 of moneys paid to its preferred stockholders, which petitioner claimed to be deductible as interest, and (b) from its income for the calendar year 1939 of moneys paid, as so-called patronage dividends out of its earnings, to purchasers from it of farmers' commodities.

(A) *Dividends on preferred stock.* Petitioner as first organized had common stock only. At a meeting of its common shareholders they voted the amendment of its articles of incorporation to provide for preferred shares of a par value of $10 per share, pursuant to provision of the Montana Code for such associations.[1]

The resolution amending the articles of incorporation provided in part as follows:

"* * * Said preferred stock to be non-assessable, non-participating; annual dividends to be cumulative and at the rate of six (6) per centum on the par value. Said preferred stock to be subject to call and redemption at par plus unpaid accumulated dividends at any time by order of the Board of Directors of said corporation. Upon dissolution or liquidation of this corporation said preferred stock shall be retired at par value plus accumulated dividends before any payment is made on common stock.

\* \* \* \* \*

"Motion was made * * * and unanimously carried that the resolution be adopted as read, *it being understood and explained that the preferred stock would be a debt of the Corporation, the dividend to be in the form of interest payable annually regardless of earnings,* and that the Board of Directors could issue the preferred stock as they deemed necessary, and redeem it as the finances of the Corporation permitted." (Emphasis supplied.)

The preferred stock was issued and its certificates were in the usual form showing their par value, and not even mentioning the percentage of the preferred dividends. They contained no reference to the matter emphasized above. Petitioner claims that the statement of the resolution "it being understood and explained that the preferred stock would be a debt of the Corporation, the dividend to be in the form of interest

payable annually regardless of earnings," made all the stock creating proceeding a nullity and all that was done was to provide for the issue of notes or agreements to pay the amount of $10 as a principal money obligation, with six percent interest. Hence, it contends, the six percent per annum paid the certificate holders was interest and not dividends, and hence deductible as the former in determining net income for tax purposes. None of the persons present at the stockholders meeting was shown to be purchasers of the new preferred then created. No agreement was shown between the holders of the preferred stock to disregard their corporate participancy and treat the issue as merely such a note or agreement. None of the preferred stockholders was shown to have had any representation made to them by the corporation that what they bought was not preferred stock, but mere evidences of a money indebtedness.

We agree with the Tax Court that the holders of this preferred stock held it as stock and not as a note or other promise to pay the par value of the shares. This was the only instrument showing their relation to the petitioner.

The record does not show that a dividend was declared, and if, as petitioner contends, the money paid these stockholders by the petitioner was not a dividend, they were not entitled to it. In the latter case, if anything at all, petitioner has no more than a chose in action for money paid by mistake. The statute does not provide a deduction for such choses in action. Nor has it for dividends on preferred stock. Art. 23(b)-1 of Treasury Regulations 101; Pacific Southwest R. Co. v. Commissioner, 9 Cir., 128 F.2d 815, 817; Elko-Lamoille Power Co. v. Commissioner, 9 Cir., 50 F.2d 595, 596; Brown-Rogers-Dixson Co. v. Commissioner, 4 Cir., 122 F.2d 347, 350, and cases cited.

---

[1] "6381. Classes of stock—powers of stockholders of preferred and common stock—forfeiture for non-payment of installments. The shares of stock shall not be less than ten dollars ($10.00) nor more than five thousand dollars ($5,000.00) per share, and may be made payable in installments. Every co-operative association may divide its shares of stock into preferred and common stock. The holders of preferred stock shall have no voting power and shall not participate in the management and affairs of the association, and the owners thereof shall share in the profits of the association to the extent of not exceeding six per cent. (6%) per annum on the par value thereof. The common stock may be divided into classes of different values, and the owners thereof shall share in the profits of the association in proportion to the par value of their shares; provided, however, that the owners of said common stock in the different classes shall have the same power and vote in the association. * * *" Revised Codes of Montana, 1935, c. 38.

(B) Petitioner sold to the public, including its shareholders, such commodities for farm use as gasoline. Petitioner claims a deduction for so-called "patronage dividends" paid out of its earnings to purchasers of its commodities as a rebate on the price at which the goods are sold. Petitioner's theory is that the price at which the goods are sold is not the money paid when the goods are delivered, but that amount less possible rebates to be paid *in a furture tax year.*

Since the statute organized the business to be conducted in this way, it is claimed that when in the later tax year the rebates are paid, they are "ordinary and necessary expenses paid. * * * during the taxable year in carrying on any trade or business * * *." Revenue Act of 1938, § 23(a), 26 U.S.C.A. Int.Rev.Code, § 23(a). The Montana law makes them "ordinary." They are necessary (a) to meet the competition of other traders and (b) because, petitioner claims, the Montana law makes it mandatory to pay to its patrons such a rebate out of its earnings of the year in which the goods are sold. Petitioner claims a long established administrative practice of the Commissioner to allow deductions of such dividends.

In this case the Commissioner allowed a deduction for $11,374.37 of such patronage dividends which exceeded certain amounts required by the Montana law, later considered, to be provided out of earnings for other purposes before payment of such dividends. As to $3,485.93 allocated by petitioner under accrual accounting to the tax year 1939, the Commissioner disallowed a deduction because no such provision for prior obligations had been made.

The business of the petitioner differs from that of an Idaho corporation considered by us, where the sales were made solely to the members of the corporation and were treated as a kind of dividend to its corporate members for which the income tax act and regulations allowed no deduction. Cooperative Oil Ass'n Inc. v. Commissioner, 9 Cir., 115 F.2d 666. In the instant case the business is conducted with the general public and the so-called dividends are rebates which come to all purchasers, qua purchasers, and not because of membership or stockholding interest.

We are not required here to consider whether such patronage dividends in a proper case are such business deductions, for they were not paid in pursuance of the Montana Code but in violation of its sole provision for their payment. That sole provision is (Sec. 6387, Revised Codes of Montana, 1935, c. 38), "The directors of a co-operative association, subject to revision by the stockholders at a general or special meeting may *apportion* the earnings of the association by *first* paying dividends on the paid up capital stock, not exceeding six per cent. (6%) per annum on the par value thereof, from the remaining funds, if any, accessible for dividend purposes, not less than five per cent. (5%) of the net profits for a reserve fund until an amount has accumulated in said reserve fund amounting to thirty per cent. (30%) of the paid up capital stock, *and from the balance,* if any, five per cent. (5%) for educational fund to be used for teaching co-operation, *and the remaining of said profits, if any,* by uniform dividends upon the amount of purchases of patrons and upon the wages and for salaries of employees, the amount of such uniform dividends on the amount of their purchases, which may be credited to the account of such patrons on account of capital stock of the associations; but in production associations such as creameries, canneries, elevators, factories, and the like, dividends shall be on raw material delivered instead of on goods purchased. In case the association is both a selling and a productive concern, the dividends may be on both raw material delivered and on goods purchased by patrons." (Emphasis supplied.)

It is admitted that the patronage dividends were paid to purchasers from the corporate earnings without providing for dividends on its paid-up preferred and common shares or for the reserve and the education fund.

Petitioner would have the statute read with the word "may" before each of the four items of apportionment so that the directors may select any item or items as they please.

To us it is clear that, if the statute does not make the word "may" mean "must," the words "may apportion the earnings" for various purposes and thereafter for the payment of patronage dividends are used in the permissive sense. The directors "may" or "may not" so apportion them. If they choose so to do, they must follow the statutory method of apportionment. If they do not so choose, the earnings above costs are to be held as undistributed earnings or to go to surplus, from which they

may be paid as ordinary dividends on its common and preferred stock.

It is inconceivable that the legislature would make such a sole specific disposition of the earnings prior to dividends to purchasers and mean "You need pay no attention to this only provision for patronage dividends. You do not have to provide for dividends on capital stock or establish a reserve or an educational fund at all. Just forget your stockholders who may not have bought a dollars worth of merchandise, and the reserve fund to make your business safe, and the educational fund to expand the cooperative idea, and give all your earnings to the purchasers."

Petitioner further contends that, in any event, it paid out the moneys to its customers and, though by mistake, such mistakes are usual and customary incidents of business, hence the total amount is deductible. However, assuming such a transaction warrants a deduction, the erroneous payments were not made in the tax year 1939 and were not deductible from the income of that year.

The decision of the Tax Court of the United States is affirmed.

Affirmed.