**AMERICAN BREWERY, Incorporated,
a body corporate, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 6950.**

United States Court of Appeals
Fourth Circuit.

Argued April 18, 1955.

Decided May 23, 1955.

Wilson K. Barnes, Baltimore, Md. (Anderson, Barnes & Coe, Baltimore, Md., on brief), for appellant.

Kurt W. Melchior, Sp. Asst. to the Atty. Gen. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack and Robert N. Anderson, Sp. Assts. to the Atty. Gen., George Cochran Doub, U. S. Atty., and James H. Langrall, Asst. U. S. Atty., Baltimore, Md., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of Maryland, 126 F.Supp. 477, dismissing on the merits an action brought by American Brewery, Incorporated, (hereinafter called American) against the United States of America, to recover federal income taxes, declared value excess profit taxes and excess profit taxes in the amount of $24,025.83. Jurisdiction to sue the United States for this amount in the District Court is based on 28 U.S.C. § 1346(a) (1), since the Acting Collector of Internal Revenue who collected the tax had resigned from office prior to commencement of this action. These taxes, American alleged, were illegally collected for its fiscal year of April 1, 1945, to March 31, 1946. The only question raised by this appeal is whether American should have been allowed to deduct as an ordinary and necessary business expense, under § 23(a) (1) (A) of the Internal Revenue Code of 1939, 26 U.S.C.A., a payment of $32,117.-14 made by American to the Office of Price Administration on November 9, 1945, in settlement of an action brought against American for treble damages under the Emergency Price Control Act of 1942, and the General Price Regulations then in effect.

The District Court held that this deduction was properly disallowed by the Acting Collector, since American had not proved that the allowance of this deduction would not violate declared public policy and frustrate what was a fundamental purpose of the Emergency Price Control Act. We cannot agree with this conclusion, and the District Court must be reversed.

Many of the facts were stipulated; the remaining facts were settled by the District Court's findings. American is a Maryland corporation operating a brewery in the City of Baltimore. In addition to producing beer, it prepared, starting before 1939, a simple barley malt syrup which it sold to other breweries for use in making beer. In 1939 it began selling this syrup at a price to be determined according to the following formula: six cents a pound for the syrup, plus the cost of the barley malt used in making the syrup—at that time the price of barley malt was 92 cents a bushel. The price of the barley malt syrup, as a consequence, fluctuated with the cost of barley malt. The only profit factor for American, however, was the six-cent

charge. In 1942, the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq. and the General Maximum Price Regulations of April 28, 1942, went into effect.

The president and officials of American, after reading the Act and its regulations, concluded that its pricing method on barley malt syrup was not covered and could be continued as before. American instructed all its employees to see that no O.P.A. regulations were violated. In January of 1942 the cost to American of barley malt had increased to $1.12, and this cost increase had been reflected in its price of barley malt syrup. In January of 1943 the cost of barley malt increased to $1.25 a bushel, and in August of 1943 the price increased to $1.33 a bushel. Both of these increases caused a corresponding upward adjustment in the total price of American's malt syrup.

In the summer of 1943, American concluded that it could not profitably continue the sale of the syrup, using the six cents per pound basic price, since overhead costs, including the price of barrels, had advanced. On August 10, 1943, American wrote the O.P.A. making formal application for an increase in the six-cent price factor of its syrup to seven cents. In answer, American received from the O.P.A. a copy of a regulation covering enzymatically treated syrup and a letter stating that more information would be needed if this regulation did not cover American's product, and concluding:

> "You point out in your letter that your basic price is $.06 per pound plus adjustment for increase decrease in price of raw barley malt. We would appreciate your advising us by what method you arrive at this adjustment."

American was making a simple malt syrup, not enzymatically treated, and so, on August 31, 1943, it wrote the O.P.A., setting forth in great detail the formula, the pricing method and disclosing with particularity the increases in price caused by the increase in cost to American of the barley malt used in making the syrup. The O.P.A. answered on September 8, 1943, stating that the matter was being transferred to its legal branch. The O.P.A. then began an investigation and examined American's books and records.

Nothing further happened until January, 1944, when American was served with a subpoena in a treble damage action, under § 205(e) of the Emergency Price Control Act of 1942, 50 U.S.C.A. Appendix, § 925(e), alleging that American had made an overcharge of $32,117.-14 for its malt syrup between January and December, 1943, and claiming three times that amount in damages. The gist of the claim was that American's price on barley malt syrup was covered by the provisions of the General Maximum Price Regulations of April 28, 1942, and that, since that provision did not exempt American's product, it was required to adhere to its March, 1942, price for barley malt syrup, the increases in price in 1943 being overcharges. American contended that the barley malt syrup was an "agricultural commodity" within the meaning of the Act and exempt from regulation.

The District Court granted American's motion to dismiss the complaint, concluding that the General Maximum Price Regulations of April 28, 1942, did not cover American's syrup. On appeal, we reversed, Bowles v. American Brewery, 4 Cir., 146 F.2d 842, and remanded the case to the District Court on the ground that the complaint stated a prima facie cause of action.

Before any further action, other than several motions in the District Court, the O.P.A. offered to settle the litigation for the amount of the alleged overcharge. American accepted this offer, without conceding the validity of the O.P.A.'s claim. The District Court found as a fact (in the instant case) that American did this to avoid unfavorable publicity and to avoid the further expenses of litigation. American paid $32,117.14 to the Treasurer of the United States on November 9, 1945, and on the same day the

O.P.A.'s action was entered "Agreed, Settled and Satisfied."

American went out of the malt syrup business after that, because it was unprofitable to continue at the ceiling price. It is this payment to the United States that was deducted by American as an ordinary and necessary business expense in filing its tax return for its fiscal year 1945–1946. The Commissioner disallowed this deduction; American paid the resulting deficiency, filed claim for refund and brought the present action when that claim was denied.

Although § 23(a) (1) (A) of the Internal Revenue Code of 1939 did not restrict business expense deductions on the basis of public policy, such a restriction was read into this section by judicial interpretation. In Commissioner of Internal Revenue v. Heininger, 320 U.S. 467, 64 S.Ct. 249, 88 L.Ed. 171, a case involving deductibility of legal expenses incurred by a taxpayer in an unsuccessful attack on a fraud order issued by the Postmaster General, the Supreme Court stated what has come to be the accepted criterion for denial of a deduction in such cases, 320 U.S. 467, 473, 474, 64 S. Ct. 249, 253:

> "The Bureau of Internal Revenue, the Board of Tax Appeals, and the federal courts have from time to time, however, narrowed the generally accepted meaning of the language used in Section 23(a) in order that tax deduction consequences might not frustrate sharply defined national or state policies proscribing particular types of conduct. * * *

> "If the respondent's litigation expenses are to be denied deduction, it must be because *allowance of the deduction would frustrate the sharply defined policies* of 39 U.S.C. §§ 259 and 732, 39 U.S.C.A. §§ 259, 732, which authorize the Postmaster General to issue fraud orders." (Italics ours.)

See, also, Lilly v. Commissioner, 343 U.S. 90, 72 S.Ct. 497, 96 L.Ed. 769.

In determining whether the allowance of a tax deduction as an ordinary business expense, for the payment of overcharges to the O.P.A. would frustrate the declared public policy of the Emergency Price Control Act of 1942, some courts have proceeded on the theory that whether or not such a payment could be tagged a "penalty" would provide a ready answer to the problem. This excursion into the field of semantics only leads to confusion. As the Second Circuit indicated in Jerry Rossman Corporation v. Commissioner, 175 F.2d 711, 713, even if a payment were determined to be in the nature of a penalty, this would provide no final solution to the problem, since a payment in the nature of a penalty would still be deductible if the taxpayer could prove that the overcharges giving rise to the payment were made unintentionally and in the exercise of due care. Obviously, if the payment was determined not to be in the nature of a penalty, the Court would be no closer to a decision than when it set out to make such determination, since a deduction might still frustrate the policy of the underlying act.

The true test for determining what deductions would frustrate the policy of the Act seems to us to rest upon a broader determination. The test adopted by the Ninth Circuit in National Brass Works v. Commissioner, 182 F.2d 526, 20 A.L.R.2d 590, is, we think, the proper one, giving full effect to the policies of the Act. Whether deduction as a business expense of an overcharge payment made to the O.P.A. would violate the fundamental policy of the Emergency Price Control Act of 1942 is to be determined by deciding whether the overcharges were made unintentionally, after the exercise of proper precaution by the taxpayer to comply with the Act. National Brass Works v. Commissioner, supra; Jerry Rossman Corporation v. Commissioner, 2 Cir., 175 F.2d 711. If the taxpayer proves that he made the overcharges under both these conditions, he is entitled to the deduction, provided, of

course, that the payment to the O.P.A. meets all the stated requirements of a business expense under Section 23(a) (1) (A).

■ As the Court pointed out in Commissioner of Internal Revenue v. Pacific Mills, 1 Cir., 207 F.2d 177, Section 205 (e) of the Act, after amendment by the Stabilization Extension Act of 1944, specifically provided that violators of the Act were to be subjected to no more than payment of their overcharges, rather than treble damages, when they could prove that their violation of the Act was neither wilful nor due to failure to take necessary precautions. The Court concluded that payment of the simple overcharge was in no way a punitive measure and deduction of such a payment would not violate the policy of the Act. While this amendment of the Act can have no direct effect here, since the events here occurred before its enactment, it does serve as a buttress for our interpretation of the policy of the Act. See Jerry Rossman Corporation v. Commissioner, supra.

Turning to the first requirement, that the overcharges must have been made unintentionally, we conclude that American's actions were unintentional. The record shows that the District Court, in sustaining American's position in the original treble damage action, stated in its opinion, Bowles v. American Brewery, 56 F.Supp. 82, 86:

"In granting the motion, we feel constrained to add that the very bringing of the present suit smacks of ill-advised and oppressive action on the part of the Government. * * This is no suit for ordinary damages, but the Government seeks treble damages amounting to almost $100,000, and yet, there is a total absence of any showing of wilful attempt on the part of the defendant to evade the law. On the contrary, there is every evidence of a desire to comply with the law if, and when properly assisted in understanding its complicated and perplexing structure. In short, this suit appears to be calculated to defeat, rather than to promote, the suppression of inflationary activities which was the expressed object of Congressional and administrative action."

Also, in the instant case the District Court [126 F.Supp. 479] made the following finding of fact:

"In the course of the original proceeding before this Court, heretofore referred to, local counsel for the Price Administrator admitted in argument that 'this case, on the merits, is a hardship case.' He further stated that 'The violations were, I will say, innocent and unintentional and excusable, but we do have them here and we contend and allege that the defendant, nevertheless, has sold a commodity subject to price regulation at a price in excess of the ceiling price.' "

A further factor tending to show that American's actions were unintentional is that American made a complete and voluntary disclosure of its pricing structures to the O.P.A. American took the first step by its letter of August 10, 1943, and followed this with its letter of August 31, 1943, in which it fully disclosed its pricing method. While this factor is not conclusive, the Courts generally have felt that such voluntary disclosure is evidence that the original overcharge was not intentional, especially where, as here, no complaints were received by the O.P.A. or by American from customers. See Farmers Creamery Co. of Fredericksburg, Va. v. Commissioner, 14 T.C. 879; Jerry Rossman Corporation v. Commissioner, supra.

The settlement made by American does not indicate any culpability on its part, and the District Court specifically found that such settlement was made by American for business reasons alone. On the record as a whole, we conclude that the actions of American in making the original overcharges were unintentional.

■ Turning to the second factor, the question of proper precaution; we think the record discloses that American used

proper precaution in determining that its syrup was not covered by the Act and its Regulations. Not the least of the factors supporting American's contention here is the fact that the District Court accepted American's interpretation of the Act and Regulations in the treble damage action.

The strongest factor tending to show that American had used proper care in making its determination, however, is the acceptance by the O.P.A. of the payment of the overcharges in settlement of the treble damage action. In Jerry Rossman Corporation v. Commissioner, 175 F. 2d at page 714, the court stated:

"However the Administrator's consent to accept the overcharge showed that he thought that the taxpayer had in fact used adequate care; and that was enough. We do not say that his decision was final; but it stands uncontradicted, and it was the judgment of one who was in the best possible position to make an estimate."

■ The Government contends that American did not take proper precautions since it did not obtain a ruling from O.P.A. before continuing its pricing practices. As the First Circuit pointed out in Commissioner of Internal Revenue v. Pacific Mills, 207 F.2d 177, at page 183, failure to obtain such a ruling is not fatal, stating as follows:

"* * * we do not see how it can be said that practicable precautions were not taken because an advisory ruling was not requested unless we are willing to say that 'practicable precautions' means every precaution, which would rob the phrase of its meaning, for either there would have to be resort to Procedural Regulation 1, in which event there would be no violation, or else there would automatically be a failure to take 'practicable precautions.'"

In the light of the myriad regulations formulated by the O.P.A., it would be an intolerable burden to require a business to seek a ruling from the O.P.A. on every phase of its price structure. Presumably, the regulations were to be so worded that necessity for rulings would be kept to a minimum.

American's failure to consult a lawyer for interpretation of the regulations, also, was not a lack of proper care either. The initial ruling of the District Court in favor of American's position shows that the decision made by its officials had some substantial basis. We cannot presume that legal counsel would not have advised the same course of action as that followed by American. Also, the malt syrup business constituted a minute and very minor part of American's overall business. The employment of counsel to examine each regulation for its impact on that business would not have been economically sound.

■■ It cannot be said that the payment made by American does not meet the express requirements of Section 23 (a) (1) (A). The payment made here was not only an expense; it was an ordinary and necessary expense, directly connected with and arising out of the doing of business under war-time price controls established by the O.P.A. Innocent violations of O.P.A. regulations were commonplace occurrences, and payments for such violations must be considered as a proper business expense under Section 23(a) (1) (A) of the Internal Revenue Code. See Commissioner of Internal Revenue v. Pacific Mills, 1 Cir., 207 F.2d 177; Jerry Rossman Corporation v. Commissioner, supra; National Brass Works v. Commissioner, supra.

For the reasons stated above, we hold that the District Court erred in concluding that the payment made by American was not deductible as a business expense. The judgment of that court is reversed and the case is remanded to the District Court with instructions to enter judgment for American Brewery, Incorporated.

Reversed and remanded.