BOYLE, FLAGG & SEAMAN, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 50720.   Filed October 18, 1955.

---

*Gerard A. Serritella, Esq.*, for the petitioner.
*Andrew Kopperud, Jr., Esq.*, for the respondent.

OPINION.

Raum, *Judge:* The petitioner contends that the portion of the premiums on personal liability and property damage insurance paid to the automobile dealers during the taxable years was at all times the property of the dealers and was excludible from and not a part of its gross income for those years. In the alternative it contends that, if the payments to the dealers are includible in its gross income, they constituted proper deductions as ordinary and necessary business expenses under section 23 (a) (1) (A) of the Internal Revenue Code of 1939.[1]

1. Petitioner's argument in support of its first contention is that it engaged in a series of joint ventures with the automobile dealers, and that the portions of the gross premiums on personal liability and property damage insurance which the dealers received during the taxable years belonged to them as members of these joint ventures and were not properly includible in its gross income. We do not agree. The petitioner had written contracts with underwriting insurance companies under the terms of which it was obligated to pay them 75 per cent of the gross premiums on policies placed with them

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
 In computing net income there shall be allowed as deductions:
  (a) EXPENSES.—
   (1) TRADE OR BUSINESS EXPENSES.—
    (A) In general.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *
 25 T. C.

for personal liability and property damage insurance and was entitled to retain as its commission the remaining 25 per cent. In oral agreements with the dealers it promised to pay them a specified percentage of its commission in consideration for their services in soliciting personal liability and property damage insurance from automobile buyers and sending applications therefor to it. They acted as agents of the petitioner and paid to it the entire premium collected from the applicant for a policy. They were working for an agreed compensation measured by a percentage of gross premiums. They received this compensation regardless of whether the business operated at a profit, and were not entitled to a share in the profits as such. They acquired no proprietary interest in the business. They were not joint venturers with petitioner and there is no convincing evidence that the dealers and the petitioner ever intended that the relationship between them should be that of a joint venture. Cf. *Wm. J. Lemp Brewing Co.*, 18 T. C. 586, 597. The petitioner in its income tax returns correctly treated the premiums received from the dealers, as well as those received from its licensed agents, as part of its gross income. If petitioner is to be entitled to a tax benefit with respect to the amounts paid to the dealers, such benefit must be in the form of a deduction from gross income, which is considered hereinafter as the second issue.

Cases relied upon by the petitioner are distinguishable. We do not have here an instance where several persons agreed to participate in a business and to divide its income among themselves (*Horace Mill*, 5 T. C. 691), or where a taxpayer acted as a mere conduit for receiving and passing on to another certain amounts in which he was thought to have no claim of right (*Lashells' Estate* v. *Commissioner*, 208 F. 2d 430 (C. A. 6)).

2. We now consider petitioner's alternative contention that the amounts paid by it to the automobile dealers for soliciting and sending to it applications for personal liability and property damage insurance were deductible from gross income as ordinary and necessary business expenses.

There is no serious dispute between the parties as to the basic facts. The payments were made to the dealers by petitioner in the regular course of its business. During the years 1948 and 1949 it was a common practice for licensed agents and brokers doing business in Illinois to pay automobile dealers a percentage of their commission for sending them applications for personal liability and property damage insurance. By reason of their contacts with purchasers of new automobiles the dealers were in a position to solicit this insurance and send applications therefor to agents or brokers who would pay them the usual compensation.

The insurance code of Illinois forbids an agent or broker to pay money, commission, or brokerage, or give or allow anything of value, for or on account of the solicitation of contracts on property or risks in that State to anyone other than a duly licensed person. Violation of these provisions was punishable by fine, and, during the tax period here involved, the statute was made more severe by providing for fine or imprisonment or both. It is undisputed that the automobile dealers to whom petitioner made the payments here involved were not duly licensed agents or brokers within the meaning of the Illinois statute. The payments made to them, therefore, violated the insurance laws of Illinois, and the evidence discloses that petitioner was aware of this at the time they were made.[2]

The petitioner contends that the legality or illegality of the payments which it made to the dealers is not decisive of their deductibility as ordinary and necessary business expenses under section 23 (a) (1) (A), *supra.*

The respondent contends that the allowance of the payments as deductions under section 23(a)(1)(A) must be denied because they violated State law and because their allowance would "frustrate sharply defined national or state policies proscribing particular types of conduct." The quoted words, used by the Supreme Court in *Commissioner* v. *Heininger*, 320 U. S. 467, 473, 474, and *Lilly* v. *Commissioner*, 343 U. S. 90, are now recognized as a restriction upon the deduction of business expenses. *Jerry Rossman Corporation* v. *Commissioner*, 175 F. 2d 711, 713 (C. A. 2) ; *American Brewery, Inc.* v. *United States*, 223 F. 2d 43, 46 (C. A. 4) ; *National Brass Works, Inc.*, 16 T. C. 1051, 182 F. 2d 526, 530, 205 F. 2d 104 (C. A. 9) ; *Pacific Mills*, 17 T. C. 705, 719, affirmed 207 F. 2d 177, 181, 182 (C. A. 1). To the same effect as to losses, see *Fuller* v. *Commissioner*, 213 F. 2d 102, 105 (C. A. 10).

Similar examples of payments, the allowance of which as deductions would "frustrate" Federal or State laws, are fines or penalties paid for violating them.[3] *Commissioner* v. *Longhorn Portland Cement Co.*, 148 F. 2d 276 (C. A. 5), certiorari denied 326 U. S. 728; *Burroughs Building Material Co.* v. *Commissioner*, 47 F. 2d 178 (C. A. 2) ; *Great Northern Ry. Co.* v. *Commissioner*, 40 F. 2d 372, 373 (C. A. 8) ; *William F. Davis, Jr.*, 17 T. C. 549 ; *Davenshire, Inc.*, 12 T. C. 958;

---

[2] In addition to the criminal penalties, it seems quite clear that the arrangements between petitioner and the automobile dealers were unenforceable, and that the latter could not have recovered compensation from petitioner had petitioner refused to make the payments. Cf. *Bicek* v. *Royal*, 307 Ill. App. 504, 30 N. E. 2d 747.; *Frankel* v. *Allied Mills*, 369 Ill. 578, 17 N. E. 2d 570 ; *Douthart* v. *Congdon*, 197 Ill. 349, 64 N. E. 348.

[3] In *Jerry Rossman Corporation* v. *Commissioner*, *supra*, at p. 713, the Court of Appeals for the Second Circuit said that the justification for the disallowance of such payments is that "to allow these to be deducted from the wrongdoer's gross income, reduces, and so in part defeats, the prescribed punishment."

*Bonnie Bros., Inc.*, 15 B. T. A. 1231, 1236. And in the same category, because they are either penalties or in the nature of penalties, are payments made because of willful violations of the Emergency Price Control Act of 1942. *George Schaefer & Sons* v. *Commissioner*, 209 F. 2d 440 (C. A. 2) ; *National Brass Works, Inc., supra; Henry Watterson Hotel Co.*, 15 T. C. 902, affirmed 194 F. 2d 539 (C. A. 6) ; *Joseph Salzman*, 21 T. C. 777; *Julian Lentin*, 23 T. C. 112. Cf. *Bowles* v. *Farmers National Bank of Lebanon, Ky.*, 147 F. 2d 425 (C. A. 6).

Had petitioner paid any fines or penalties for the violations in question, they plainly would not have been deductible by reason of the foregoing line of cases. However, we need not decide whether the deduction of the payments themselves to the automobile dealers must similarly be disallowed under those cases, for the allowance of the deduction is in any event precluded by a different, although related, line of decisions.

Even though the payments were "ordinary" in the sense that it was the common practice of Illinois insurance brokers to make such payments, and even though they may have been thought to be "necessary" in the sense that the automobile dealers might not have referred their business to petitioner unless it made such payments,[4] the deduction must nevertheless be disallowed by reason of the decisions which construe the words "ordinary and necessary" so as to imply a condition that the payments themselves must not be illegal. Thus, it has often been held that expenditures which are wrong in themselves or which violate Federal or State law do not qualify as ordinary and necessary business expenses under the statute. See *Gallatin Farmers Co.* v. *Commissioner*, 132 F. 2d 706 (C. A. 9) ; *Rugel* v. *Commissioner*, 127 F. 2d 393 (C. A. 8) ; *Raymond F. Flanagan*, 47 B. T. A. 782; *T. C. Nicholson*, 38 B. T. A. 190, 199; *Easton Tractor & Equipment Co.*, 35 B. T. A. 189; *The Lorraine Corporation*, 33 B. T. A. 1158, 1166; *Israel Silberman*, 44 B. T. A. 600. It has been said that the basis for these holdings is that "the law will not recognize the necessity of engaging in illegal courses in the conduct of a business." *National Outdoor Advertising Bureau, Inc.* v. *Helvering*, 89 F. 2d 878, 881 (C. A. 2). While the question of the deductibility of expenditures which violate a Federal or State law was not at issue in the *Lilly* case, the Supreme Court recognized (343 U. S. at pp. 94–95) that such expenditures "by virtue of their illegality" might not be "ordinary and necessary" business expenses within the meaning of the statute. Petitioner has referred us to no authority to the contrary, and we therefore hold that the payments it made to unlicensed automobile dealers, and others, for

---

[4] Whether petitioner would have lost the business of these dealers is at best conjectural on the record before us. The evidence shows that petitioner ceased making such payments in 1950, and there is no suggestion that its business was thereafter adversely affected.

25 T. C.

soliciting insurance for it in contravention of the insurance laws of the State of Illinois, are not deductible under section 23 (a) (1) (A).

3. The amounts expended by petitioner during the taxable years to absorb certain premium differences and to take care of errors made in advising customers of the cost of policies qualify, we think, as ordinary and necessary business expenses. The respondent erred in disallowing their deduction as such.

*Decision will be entered under Rule 50.*