R. E. L. Finley v. Commissioner. Jerline Dick Finley v. Commissioner. R. E. L. Finley and Jerline Dick Finley v. Commissioner.
Finley v. Commissioner
Docket Nos. 54206-54208.
United States Tax Court
T.C. Memo 1957-16; 1957 Tax Ct. Memo LEXIS 237; 16 T.C.M. (CCH) 80; T.C.M. (RIA) 57016; January 28, 1957
C. E. Ram Morrison, Esq., Republic Building, Oklahoma City, Okla., and Phil Daugherty, Esq., for the petitioners. Charles J. Sullivan, Esq., and Francis S. Gettle, Esq., for the respondent. MULRONEY Memorandum Findings of Fact and Opinion The respondent determined income tax deficiencies and additions to tax, as follows: Amount of
Addition to Tax
Dkt. No.
Year
Petitioner
Deficiency
Under § 293(b)
54206
1946
R. E. L. Finley
$29,855.40
$14,927.70
1947
R. E. L. Finley
67,387.19
33,693.59
54207
1946
Jerline Dick Finley
27,730.31
13,865.16 *
1947
Jerline Dick Finley
66,770.74
33,385.37 *
54208
1948
R. E. L. Finley and Jerline Dick Finley
18,666.89
9,333.44 *
1949
R. E. L. Finley and Jerline Dock Finley
4,005.54
0
1950
R. E. L. Finley and Jerline Dock Finley
4,444.52
0
*238 The issues in these consolidated dockets are: 1. Whether Harry L. Berry, Dick L. Berry, and Charles A. Liming were partners in the Finley-O'Shea Construction Company during the fiscal years ended July 31, 1946 through July 31, 1950; 2. Whether certain distributions by the Finley-O'Shea Construction Company to Dan M. O'Shea and R. W. Finley were actually the income of R. E. L. Finley; 3. Whether certain payments by the Finley-O'Shea Construction Company designated in the amounts of $9,500, $47,203.26 and $514 in the fiscal years ended July 31, 1946, 1947, and 1948, respectively, as subcontract expenses were properly disallowed; 4. Whether job-cost expenses of $2,306.25 and $1,125 of the Finley-O'Shea Construction Company in the fiscal year 1946 were properly disallowed; 5. Whether traveling expenses of $1,020 and $650 claimed by the Finley-O'Shea Construction Company in the fiscal years 1946 and 1947 were properly disallowed; 6. Whether entertainment expenses in the amount of $765 claimed by the Finley-O'Shea Construction Company in the fiscal year 1947 *239 were properly disallowed; 7. Whether certain expenditures by the Finley-O'Shea Construction Company in the amounts of $1,375 and $255 in the fiscal years 1947 and 1948 were properly disallowed; 8. Whether gains of $3,960.49 and $1,232.91 realized from the sale of certain assets in 1946 and 1947 and gains realized from the sale of certain automotive equipment in 1946 are includible in the income of R. E. L. Finley for those years; 9. Whether certain losses sustained in the operation of a farm and claimed by R. E. L. Finley and Jerline Dick Finley in the years 1946 through 1950 were properly disallowed; 10. Whether certain traveling and entertainment expenses of R. E. L. Finley in the years 1946, 1947 and 1948 were properly disallowed; 11. Whether certain depletion allowances claimed by R. E. L. Finley and Jerline Dick Finley in 1947 were properly disallowed; 12. Whether a bad debt deduction claimed by R. E. L. Finley and Jerline Dick Finley in 1948 was properly disallowed; 13. Whether a deduction of $1,096.64 for legal and accounting expenditures claimed by R. E. L. Finley and Jerline Dock Finley in 1948 was properly disallowed; 14. Whether a deduction of $184.90 for *240 medical expenses claimed by R. E. L. Finley and Jerline Dick Finley in 1950 were properly disallowed; and 15. Whether any part of the deficiency determined against R. E. L. Finley in the years 1946 and 1947 was due to fraud with intent to evade tax. Findings of Fact R. E. L. Finley, herein called the petitioner, and his wife, Jerline Dick Finley, were residents of Oklahoma City, Oklahoma, during the years here involved. They filed their Federal income tax returns for the years 1946 through 1950 with the then collector of internal revenue for the district of Oklahoma. In 1945, and for several years prior to 1945, petitioner was a partner in the Midwest Materials and Construction Company (hereinafter called Construction). Construction was engaged in the business of selling materials and performing certain types of construction work. In June 1945, the petitioner suffered a heart attack. Later in that same year the petitioner agreed to sell some of his interest in Construction to J. Floyd Frazier, his partner in that firm, with the actual transfer to take place early in 1946. In August 1945, Construction obtained a contract from Oklahoma County to supply road materials for the *241 County's 1945-1946 fiscal year. In the fall of 1945 the petitioner, together with his son, Robert Wesley Finley, made preparation for the formation of a new partnership to engage in general construction work. Petitioner approached two experienced engineers, John J. Stobaugh, Jr. and H. R. Landt, to become associated with the new group but they refused. Petitioner also discussed the contemplated venture with Charles A. Liming, the son-in-law of C. W. McFerron, the County Engineer of Oklahoma County, Oklahoma. On November 1, 1945, articles of copartnership for the formation of the Finley-O'Shea Construction Company (hereinafter called FOSCO) were signed on that date and at various subsequent dates by R. E. L. Finley, R. W. Finley, Dan M. O'Shea, Charles A. Liming, Harry L. Berry and Dick L. Berry. It was provided in the articles that all profits and losses would be shared equally among the partners. On January 26, 1946, the construction contract awarded by Oklahoma County to Construction in the prior year was assigned by Construction to FOSCO. Dan M. O'Shea was petitioner's son-in-law. Harry L. Berry was petitioner's brother-in-law. He came to Oklahoma City in 1915 and commenced *242 business as an independent oil operator. He had had some experience as a bookkeeper. Dick L. Berry, son of Harry and Irene Berry, had a background of geology and petroleum engineering. Charles A. Liming graduated from Purdue University in 1939 as an electrical engineer. In 1945, after prior employment with the Northwestern Bell Telephone Company, the Boeing Aircraft Company, and the Puget Sound Bridge & Dredging Company, he was employed by the Public Service Company of Oklahoma at Tulsa, Oklahoma, and he remained a full time employee of that company for at least five and one-half years. Prior to November 1, 1945, the petitioner learned that Oklahoma County was ready to complete work on the McArthur Boulevard and Bridge project. Robert Wesley Finley contacted several contractors to determine what they would charge to perform stipulated jobs on a subcontract basis. A firm bid was obtained from Ottinger Brothers of Oklahoma City and subsequently a bid for the work was submitted to the County in the names of Robert Wesley Finley and Dan M. O'Shea. On October 24, 1945, the County awarded a contract for the furnishing of road materials to "R. W. FINLEY & DAN M. O'SHEA doing business under *243 the firm name and style of R. W. FINLEY & DAN M. O'SHEA." This contract was assigned later in the year to FOSCO. In November 1945, the County notified R. E. L. Finley and R. W. Finley that they could commence work on the McArthur Boulevard and Bridge project. Harry L. Berry did the accounting work for FOSCO and he kept the FOSCO books in the office maintained by him in Oklahoma City. Dick L. Berry was given the job of checking the arrival and unloading of freight cars at various FOSCO job sites. He also worked nearly every day on the farm owned jointly by the Finley and Berry families in Arcadia, Oklahoma. Harry L. Berry was not acquainted with Charles A. Liming before the formation of FOSCO. During the fiscal year ended July 31, 1947, the following charges, among others, were made to the account of Harry L. Berry on the books of FOSCO: $7,493.47, which was initially charged to Dick Berry, then transferred to the account of Harry L. Berry; $2,218.54, $534.79 and $267.75, which were the full cost of a pump, an engine, and a refrigerator for the Arcadia farm; $2,068, which was the cost of a water well on the Arcadia farm; and $3,307.67, which was the cost of a Cadillac car purchased *244 for Jerline Dick Finley. During the fiscal year ended July 31, 1946, the amounts of $660 and $1,000.40, which were originally charged to R. E. L. Finley for Arcadia farm expenditures on the FOSCO accounts, were charged to the account of Dick L. Berry; in that same fiscal year the amount of $604.90, representing the cost of a water well, and other farm operating expenses amounting to $5,204.96, were charged to the account of Dick L. Berry; in the fiscal year 1947 the account of Dick L. Berry was charged with farm operating expenses amounting to $17,113.33; and in the fiscal years 1948, 1949 and 1950 the account of Dick L. Berry was charged with farm operating expenditures amounting to $3,523.25, $942.01 and $1,376.05, respectively. The Rail Fence, a tourist motel in Oklahoma City, Oklahoma, was operated by the Rail Fence Operating Company, a partnership, hereinafter called FENCO. FENCO began operations in the fall of 1947. Its books were kept on a calendar year basis. FENCO had the same partners as FOSCO, and the partners in FENCO had the same partnership interest in FENCO's profits and losses as they had as partners in FOSCO. The land on which the Rail Fence was situated was acquired *245 on February 3, 1947, with title held by Robert W. Finley in trust and for the benefit and use of FOSCO. The original cost of the real estate and the building and fixtures comprising the Rail Fence was paid by FOSCO, and FOSCO made expenditures for FENCO during FOSCO's fiscal years ended July 31, 1948 and 1949. The FENCO expenditures and withdrawals from FOSCO were treated on the FOSCO books as charges against the capital accounts of the FOSCO partners. No formal partnership agreement was ever prepared to cover FENCO's operations. FENCO's operations were recorded in FOSCO's general ledger under an account designated as "Rail Fence Operating Company, Robert W. Finley and Dan M. O'Shea, Rail Fence Tourist Hotel." On July 31, 1949, the investment by FOSCO in the physical properties comprising the Rail Fence was shown as follows on the books of FOSCO. Buildings
$200,153.13
Water Wells
25,483.91
Air Conditioning Equipment
21,777.58
$247,414.62
Accumulated Depreciation
53,566.67
$193,847.95
Real Estate
9,055.50
Total
$202,903.45 Certain assets used in the Rail Fence operation, with book values of $31,969.95 and $38,038.90 in the years 1947 and 1948, respectively, *246 were not included among the FOSCO assets on FOSCO's books. FOSCO made payments to its various subcontractors according to the estimates prepared by a county project engineer who designated the amount of work done up to a given date. Some of the subcontractors of FOSCO submitted invoices covering work done on the various projects. Roy "Tex" Baughman, one of these subcontractors, performed work for FOSCO during the years 1946 and 1947. It was not his practice to submit invoices to FOSCO for work done. On July 9, 1947, FOSCO issued check No. 1851, dated July 9, 1947, in the amount of $1,995, to Baughman. This check was endorsed by Baughman and given to R. W. Finley, who endorsed the check, cashed it, and then deposited the proceeds in his (R. W. Finley's) checking account at the First National Bank on July 12, 1947. On July 6, 1946, FOSCO issued check No. 265 to Baughman in the amount of $9,500. It was endorsed by Baughman and given by him to R. W. Finley, who deposited the proceeds of the check, $4,750 in his bank account at First National, and $4,750 in his checking account at the same bank. The subcontract costs claimed by FOSCO in the fiscal years 1947, 1948 and 1949 were supported *247 by vouchers. FOSCO made payments in 1946 amounting to $1,270.70 for air conditioners to be used in residences and properties owned by R. E. L. Finley and H. L. Berry and charged such payments to engineering expense. FOSCO's check, No. 378, in the amount of $259.98, which was issued to Baughman and charged to the FOSCO expense account designated "McArthur Bridge", was in payment of a personal obligation of R. E. L. Finley to Baughman. In 1946 work was begun on the reconstruction of a garage apartment at 1211 N. Dewey Street. Plans were prepared by the architects, Noftsger & Lawrence, whose fee was paid in two installments of $300 and $100. The $300 payment, FOSCO check No. 258, was charged to the "McArthur Contract" on the FOSCO books, and the $100 payment, FOSCO check No. 889, was charged on the FOSCO books to the drawing account of Dan M. O'Shea. The property identified as 1211 N. Dewey Street was a reconstructed two-story building located at the rear of 1204 Classen Boulevard, Oklahoma City. The building contained a fourcar garage with adjoining servant's quarters and an apartment which occupied the entire second floor. Reconstruction work was done on this building in 1946 and *248 during the years 1946 through 1950 the garage apartment was occupied by Dan M. and Jacqueline Finley O'Shea. The Federal income tax returns filed by R. E. L. and Jerline Dick Finley show the following items in connection with the property at 1211 N. Dewey Street: 1946
1947
1948
1949
1950
Rents
$120.00 $720
$ 720.00
$720.00 $800
Expenses: Depreciation
$133.32 $800
$ 800.00
$800.00 $800
Repairs
20.72
Painting
353.64
Utilities
9.00
Insurance
98.13
Total expenses
$154.04 $800
$1,153.64
$907.13 $800
Loss on rental property
$ 34.04
$ 80
$ 433.64
$187.13
$ 0 In the fiscal year 1946 the drawing account of Dan M. O'Shea on the FOSCO books was charged with $2,500 which represented a payment to Jerline Dick Finley, and in the fiscal year 1947 his account was charged with the amount of $20,060.44 representing construction costs and other expenses incurred in connection with the property at 1211 N. Dewey Street. In the fiscal year 1946 the drawing account of R. W. Finley on the FOSCO books was charged with the amount of $2,464.07 which was a portion of the cost of improving the property at 1211 N. Dewey Street. *249 On April 18, 1953, a warranty deed, dated August 1, 1945, was recorded in the Clerk's office, Oklahoma County, Oklahoma, showing the conveyance from R. E. L. Finley and Jerline Dick Finley to Jacqueline Finley O'Shea of the property known as 1204 Classen Boulevard, which included the property at 1211 N. Dewey Street. Under the deed there was reserved to Jerline Dick Finley and her assigns the full benefits and use of the above-described premises and all rents, issues and profits thereof during her natural life. The warranty deed to the property at 1211 N. Dewey Street was delivered to Jacqueline Finley O'Shea in 1945. R. E. L. Finley and J. Floyd Frazier, in 1945, were joint owners of certain construction and automotive equipment used in the operation of Construction. In 1945 it was agreed by the two parties that R. E. L. Finley would sever his relationship with the Construction operation, and it was further agreed that J. Floyd Frazier could continue to use the equipment for an undetermined period. In 1946 certain pieces of this gravel loading and handling equipment were sold at a gain of $3,960.49, and automotive equipment, formerly owned by Construction, was also sold in 1946 *250 at a gain of $1,563.24. In his notice of deficiency to R. E. L. Finley the respondent made the following adjustments in connection with thesese items: * * *
"(b) Gain on Sale of Automotive
Equipment
$1,563.24
"You failed to report as income the gain on the sale of automotive equipment on the ground that such equipment was the property of your son and daughter. Your net income has been increased by this unreported long-term capital gain. * * *
"(f) Gain on Sale of Capital
Assets
$3,960.49
"In your return, you indicate a gain on the sale of assets in the amount of $3,960.49 but consider it the separate income of Jerline Dick Finley. It is held that this gain is your separate income." Respondent made the following adjustment for the year 1947 in his notice of deficiency to R.E.L. Finley: "(h) Gain on Sale of Property
$1,232.91
"In the return of Jerline Dick Finley there is reported as an installment sale the gain on the sale of a farm in McClain County, Oklahoma. The amount reported as taxable income in 1947 is $1,232.91. It is held that this is income from your separately owned property and the gain is therefore *251 taxable to you." Respondent, in his notice of deficiency, did not recognize Harry L. Berry, Dick L. Berry, and Charles A. Liming as partners in the Finley-O'Shea Construction Company for the fiscal years ended July 31, 1946 through July 31, 1950 and determined that the partnership actually consisted only of R. E. L. Finley, R. W. Finley and Dan M. O'Shea. Respondent determined that the Rail Fence Motel was operated by the same parties who were partners in the Finley-O'Shea Construction Company and that consequently the losses from the operation of the motel for the years 1947 and 1948 were to be distributed among those partners. Petitioner did not claim any portion of these losses on his returns for those years on the ground that the motel was operated solely by R. W. Finley and that consequently the entire losses were deductible by him for those years. Respondent disallowed various deductions claimed by the Finley-O'Shea Construction Company during the fiscal years 1946 through 1950 and certain deductions claimed individually by the petitioner. The partners in FOSCO in the fiscal year ended July 31, 1946, were R. E. L. Finley, R. W. Finley, Harry Berry, Dick Berry, Dan M. O'Shea, *252 and Charles A. Liming. In the fiscal years ended July 31, 1947, 1948, 1949 and 1950 the partners in FOSCO remained the same with the exception of Charles A. Liming whose only relationship with FOSCO after July 31, 1946 was as an employee. No part of the deficiencies in the Federal income tax of R. E. L. Finley for the years 1946 and 1947 was due to fraud with the intent to evade tax. Opinion MULRONEY, Judge: Respondent contends that the actual partners of FOSCO were R. E. L. Finley, R. W. Finley, and Dan M. O'Shea and that the other three parties involved, Harry L. Berry, Dick L. Berry, and Charles A. Liming were at the most, merely employees of FOSCO. The criteria to be considered in deciding whether or not a partnership exists for purposes of Federal taxation were outlined in Commissioner v. Culbertson, 377 U.S. 733, where the Court said: "The question is * * * whether, considering all the facts-the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for *253 which it is used, and any other facts throwing light on their true intent-the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. * * *" Here the several parties involved undisputedly entered into a written partnership agreement spelling out in detail the nature and extent of FOSCO's contemplated operations. We have examined the evidence and the testimony of the parties and we are convinced that the parties did have the intent to join together in the conduct of the construction business. Distribution of the partnership earnings was properly made to all the partners and such distributions were indicated on the partnership returns filed by FOSCO during the years here involved. All of the partners took an active part in the daily affairs of FOSCO. It is true that R. E. L. Finley appears to have been a guiding force in the partnership, and it is also true that more time was spent on the partnership affairs by some partners than by others. This, however, cannot militate against the existence of a valid partnership. It is equally true, as we have found, that some of the records of the partnership were kept in an extremely *254 loose manner, and it also appears that expenditures were charged on the FOSCO books to the wrong drawing accounts. These incorrect charges will, of course, be taken into account in determining the true income of the parties involved during the years before us. But we cannot accept these indications of questionable bookkeeping as dispositive of the partnership issue. Respondent puts great emphasis on the fact that one of the partners of FOSCO during the first fiscal year of its operation, ended July 31, 1946, was denied a full share of the year's profits in the partnership and in subsequent years treated by FOSCO as an employee. Respondent contends that this sequence of events shows that no valid partnership existed from the very beginning. We regard this, however, as a mere adjustment in the personnel of the partnership at the end of the first fiscal year, when the nature of the partnership's operations became fully evident. There is no reason why FOSCO could not go on as a partnership with Charles A. Liming as an employee in subsequent years. We hold that a valid partnership existed during the fiscal years 1946 through 1950, with the adjustment in the members of the partnership *255 at the end of the first fiscal year through the elimination of Charles A. Liming as a partner. Respondent disallowed the deduction by FOSCO of $16,864.75 in the fiscal year 1947 which was the amount claimed by FOSCO as engineering fees paid to Charles A. Liming. Respondent contends, in essence, Liming offered no engineering services to FOSCO and offers evidence to show Liming's lack of familiarity with construction operations in general. Respondent also emphasizes the fact that Liming was employed elsewhere at this same time. However, FOSCO did regard Liming as an employee, after July 31, 1946, and it did agree to pay him a commission for engineering services in connection with certain types of work done by FOSCO for Oklahoma County. It appears that these payments were actually made to Liming. Also, Liming did have a general engineering background. We believe that the petitioner has carried the burden of proof of showing that FOSCO did obtain engineering services from Liming and that it is entitled to the deduction of $16,864.75 for the fiscal year ended July 31, 1947. Another issue involves certain expenditures made to reconstruct and improve a garage apartment. Respondent contends *256 that Dan M. O'Shea and R. W. Finley did not actually receive the full amount of FOSCO's distributable income credited to them but, instead, that Dan M. O'Shea was required to use $20,060.44 of, his income from FOSCO to reconstruct a garage apartment at 1211 N. Dewey Street, which property, it is alleged by respondent, was owned during the years 1946 through 1950 by R. E. L. and Jerline Dick Finley; and that R. W. Finley was required to pay $2,464.07 of the costs for the same purpose. Respondent shows that R. E. L. and Jerline Dick Finley reported the income from the property in their Federal income tax returns for the years 1946 through 1950 and claimed deductions for depreciation and the various expenditures incurred in connection with this property. This does not help the respondent because it is evident from the deed that Jerline Dick Finley reserved a life estate in the property and was entitled to the income, as well as the deductions, in connection with such property. It is true that the warranty deed conveying this property to Jacqueline was recorded in 1953. However, it was dated August 1945, and this, together with the evidence presented by petitioner, convinces us that the *257 deed was actually delivered to Jacqueline Finley O'Shea in 1945. We hold that the property at 1211 N. Dewey Street was owned by Jacqueline Finley O'Shea during the years before us and that the expenditures on this property, which were charged on the FOSCO books to Dan M. O'Shea and R. W. Finley, did not represent income to the petitioner for those years. Respondent disallowed certain architects' fees which represented work done by architects on the property at 1211 N. Dewey Street and charged on the FOSCO books to the "McArthur Contract." Petitioner has failed to overcome the presumption of correctness in this determination of the respondent, and we sustain the respondent. Respondent contends that the amount of $2,500, charged on the FOSCO books to Dan M. O'Shea, was actually transferred by O'Shea to Jerline Dick Finley. We hold that this payment of $2,500 by Dan M. O'Shea to Jerline Dick Finley in 1946 represents income to her. Petitioner has not carried his burden of proof that such payment was not income and, in fact, has made no serious effort to explain this item. Respondent disallowed deductions claimed by FOSCO in the amounts of $9,500, $47,203.26 and $514 for the fiscal *258 years ended July 31, 1947, 1948 and 1949, respectively. These payments, designated as subcontract costs on FOSCO's books, were disallowed on the grounds that (a) they were not substantiated and (b) such payments were, in fact, returned to FOSCO, or to FOSCO partners, by Roy "Tex" Baughman, the subcontractor. It is true there is evidence tending to show that in the fiscal year 1946 the amount of $9,500 was repaid by Baughman to R. W. Finley, one of FOSCO's partners, and that in the fiscal year 1947 the amount of $1,995 was also returned by Baughman to R. W. Finley. However, these two payments do not necessarily imply that Baughman did not actually do the work represented by such payments. It is not quite clear why the respondent disallows the amount of $9,500 in FOSCO's fiscal year 1947 in the face of the fact that such check is dated June 6, 1946. However that may be, such exchanges of money between the two men may be explained in other ways. We are satisfied that these amounts, $9,500 in the fiscal year 1946, and $1,995 in the fiscal year 1947, as well as the remaining payments disallowed by the respondent in the fiscal years 1947, 1948 and 1949 were valid payments by FOSCO for those *259 years to its subcontractor and may be deducted. Respondent disallowed job-cost expenses deducted by FOSCO in the fiscal year 1946 in the amounts of $2,306.25 and $1,125, on the ground that such deductions were not substantiated. Petitioner did introduce into evidence a FOSCO voucher in the amount of $4,349.67 which purported to be a payment made to Baughman. However, there is no way we can tell whether this voucher covers the particular job costs disallowed by respondent. The amount of the voucher does not correspond with the amount disallowed. No evidence was introduced explaining the nature of the individual items on the voucher to enable us to compare them with the amounts disallowed. Petitioner has not met his burden of proof on these amounts disallowed and on this issue we sustain the respondent. Respondent disallowed travel expense deductions claimed by FOSCO in the amounts of $1,020 and $650 for the years ended July 31, 1946 and 1947, respectively. In support of these deductions FOSCO's bookkeeper testified that he made out checks to the FOSCO partners whenever they told him they had incurred travel expenses. No effort was made to substantiate the exact nature of these payments. *260 We are persuaded that FOSCO did incur travel expenses in these years but are not convinced that the amount is as great as that claimed. Using our best judgment, we find that FOSCO is entitled to deductions for travel expenses in the amounts of $750 and $400 for the fiscal years 1946 and 1947, respectively. Cohan v. Commissioner, 39 Fed. (2d) 540. Respondent disallowed deductions claimed by FOSCO in the fiscal year ended July 31, 1947 for entertainment expenses in the amount of $765. No evidence was offered in support of this claim. Respondent argues that these entertainment expenses represented expenditures for liquor, and there is no attempt made by petitioner to refute this. The purchase and sale of intoxicating liquors is prohibited in the State of Oklahoma. Title 37, chap. 1, sec. 1, Okla. Stat. Anno. Clearly, expenditures for liquor by FOSCO would be contrary to State policy and would, therefore, not be allowable as ordinary and necessary business expenses under section 23(a) of the 1939 Internal Revenue Code. Boyle, Flagg & Seaman, Inc., 25 T.C. 43. We sustain the respondent on this issue. Respondent disallowed deductions claimed by FOSCO in the *261 amounts of $1,375 and $255 in the fiscal years ended July 31, 1947 and 1948, respectively. These is evidence to support respondent's contention that amounts disallowed were payments made by FOSCO to elevator operators as Christmas gifts, to various county employees, and to railroad employees to obtain preferential treatment for FOSCO gravel cars. There is no other evidence offered by petitioner to explain these payments or to substantiate them in any way. The amounts paid to county employees, absent any further explanation, cannot be deducted as ordinary and necessary expenses under section 23(a) of the 1939 Code. T. G. Nicholson, 38 B.T.A. 190. Gifts to elevator operators cannot be regarded as ordinary and necessary business expenses. Nor is there any evidence to show that payments to railroad employees were ordinary and necessary. See Kelley-Dempsey & Co., 31 B.T.A. 351. We sustain the respondent. Respondent included in petitioner's income the amounts of $3,960.49 and $1,232.91 in the years 1946 and 1947, respectively, which amounts represented gains realized in those years from the sale of gravel-loading equipment, construction equipment, and automotive *262 equipment. This equipment was owned and controlled, prior to 1946, by the petitioner and J. Floyd Frazier in the operation of Construction's business. We so held in R. E. L. Finley, 27 T.C. - (Nov. 30, 1956). Petitioner in his brief concedes that that case will be determinative here, so far as the ownership of those particular assets is concerned. We are convinced from all the evidence that in these years the petitioner was still part owner of these assets and, as such, must include his portion of the gains from the sale of this equipment in his income for the proper years. We so hold. Respondent disallowed certain losses claimed by the petitioner in connection with a farm in Arcadia, Oklahoma, in which petitioner owned a half interest. There is no evidence or testimony to show that this farm was operated as a trade or business or that it was a transaction entered into for profit. We are convinced from all the evidence that the expenses and losses incurred in connection with the farm were personal in nature and not deductible. Section 24(a)(1) of the 1939 Internal Revenue Code. Petitioner claimed deductions amounting to $7,575 in the years 1946 through 1948 for unreimbursed travel *263 and entertainment expenses. Respondent disallowed these deductions. No evidence was introduced to show the occasion of these expenditures or the specific amounts spent. Petitioner computed the amount of the deduction by estimates keyed to the business performed by the companies in which he had an interest. We believe that petitioner did incur such expenses, which were not reimbursed, and using our best judgment, we find that he incurred, individually, travel and entertainment expenses in connection with his business operations of $3,000 for the years 1946 through 1948. Frederick S. Klein, 25 T.C. 1045; Cohan v. Commissioner, supra. Respondent included in petitioner's income the gain of $1,563.24 realized from the sale of certain automotive equipment in 1946. Petitioner was the owner of such automotive equipment. During the years 1942 through 1945 he had full dominion over the use of such equipment and we have made a finding to this effect in R. E. L. Finley, supra. Petitioner, in his brief, agrees that the determination as to the ownership of these automotive assets in R. E. L. Finley, supra, will be determinative of the issue here. We sustain the respondent. *264 Respondent disallowed an unsubstantiated depletion allowance claimed by petitioner in 1947, a bad debt loss of $120, claimed by petitioner in 1948, and unsubstantiated medical expenses of $184.90 claimed by petitioner in 1950. No evidence was introduced by the petitioner to support these several deductions and we hold that the respondent is correct in disallowing them. Petitioner claimed a deduction of $1,962.44 in 1948 for legal and accounting expenses. Respondent disallowed $1,096.64 out of the total amount claimed. Petitioner introduces no evidence sufficient to meet his burden of proof on this issue, and we must sustain the respondent's disallowance. Respondent determined additions to tax under section 293(b) of the 1939 Internal Revenue Code in Docket No. 54206, covering the years 1946 and 1947. Section 293(b) provides for a 50 per cent addition to the tax if "any part of any deficiency is due to fraud with intent to evade tax." The burden is on the respondent to prove fraud by clear and convincing evidence. Arlette Coat Co., 14 T.C. 751. Respondent emphasizes, as an indication of fraud, the amounts of $9,500 and $1,995 ostensibly paid to Baughman by FOSCO *265 as subcontract costs and then returned by Baughman to R. W. Finley. However, we have no evidence to show that petitioner received any portion of this money. He denies all knowledge of these transactions. Respondent also argues that the extensive remodeling costs in 1946 and 1947 on the apartment at 1211 N. Dewey Street, which respondent contends was owned by petitioner at this time, were charged on the FOSCO books to Dan M. O'Shea, the petitioner's son-in-law, and R. W. Finley, and that these amounts were fraudulently omitted from petitioner's income for those years. Petitioner produced in evidence a warranty deed dated August 1, 1945, showing a conveyance of this property to Jacqueline Finley O'Shea, reserving a life estate in the property to Jerline Dick Finley. The deed was recorded on April 18, 1953. We have found as a fact that the deed was actually delivered to Jacqueline in 1945 and that consequently there is no question of including in petitioner's income for the years 1946 and 1947 the amounts used to remodel such property. We have examined all the evidence and, while there are indications of laxity in bookkeeping methods, we do not believe that the respondent has shown by *266 clear and convincing evidence that any part of the deficiencies in petitioner's income tax for the years 1946 and 1947 was due to fraud with intent to evade tax. Decisions will be entered under Rule 50 Footnotes
*. Respondent at the trial conceded that there be no additions to tax in Docket No. 54207 and in Docket No. 54208.↩