COED RECORDS, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5624–64. Filed January 23, 1967.

*Andrew J. Feinman*, for the petitioner.
*Lawrence J. Shongut*, for the respondent.

ATKINS, *Judge:* The respondent determined an income tax deficiency in the amount of $11,933.17 for the taxable year 1959. Also involved are determinations of the correct amount of net operating loss for the taxable year 1960 and the correct amount of taxable income for the short period ended December 31, 1958, for the purpose of determining the amount of the net operating loss to be carried back from the taxable year 1960 to be applied as a net operating loss deduction for the taxable year 1959. The deductibility of certain payments having been conceded by the respondent, the issue remain-

ing is whether amounts paid by the petitioner to employees of radio stations for the purpose of obtaining favorable treatment with respect to having its records played by such stations are deductible as ordinary and necessary business expenses.

### FINDINGS OF FACT

Some of the facts have been stipulated and the stipulations are incorporated by this reference.

The petitioner was incorporated on February 7, 1958, in the State of New York and was engaged in the business of producing and selling music records. It kept its books of account and filed its income tax returns on an accrual method of accounting and a calendar year basis. Its returns for the period February 7, 1958, to December 31, 1958, and for the taxable years 1959 and 1960 were filed with the district director of internal revenue, Manhattan District, New York, N.Y.

When the petitioner manufactured its records, special advance pressings of each record were made and sent to petitioner's distributors. The distributors employed promotion men to promote the sale of records. During the years in question the petitioner made payments by check to promotion men for the purpose of having them do extra work to promote its records. Such amounts were not paid by the petitioner for the purpose of being passed on to disc jockeys or other radio station personnel. Payments to promotion men totaled $125 in 1958; $1,717.18 in 1959; and $3,300 in 1960.

During the taxable period ended December 31, 1958, the petitioner paid $300 to individuals for their services as writers. During 1959 the petitioner paid a total of $1,446.69 to various persons as follows: $650 to writers; $650 to one of its salaried employees for traveling with a recording artist to visit radio stations and for out-of-town visits to publicize the artist's records; $36.69 for travel expense for one of its recording artists; $100 to a pianist for rehearsing an artist; and $10 for taxi fare in connection with its business.

During 1958 and 1959 the petitioner made payments by check to disc jockeys and other salaried employees of various radio stations for the purpose of influencing such individuals to give preference to the playing of the petitioner's records. Such payments were common in the industry and were commonly referred to as payola.[1] Some of the payments took the form of commissions, the amounts of which were based upon the number of records sold by the petitioner in a given radio station listening area. The petitioner did not inform the employers of the recipients that it was making the payments, and the

---

[1] Commencing Feb. 8, 1960, hearings were held before a subcommittee of the House Committee on Interstate and Foreign Commerce, 86th Cong., 2d Sess., on payola and other deceptive practices in the broadcasting field.

petitioner did not receive any inquiry in that regard. Such payments totaled $3,470 in 1958 and $15,299.73 in 1959. No such payments were made after December 6, 1959. The payments in 1959 included a total of $4,850 paid by checks, at the direction of disc jockey Peter Tripp, to his wife, pursuant to a written contract between the petitioner and Tripp, to which Tripp's employer was not a party. The payments in 1959 also included a total of $200 paid to disc jockey Tommy Small. Tripp subsequently pleaded guilty to 35 counts of a 39-count indictment filed in 1960 charging violation of section 439 of the Penal Law of the State of New York[2] and he was fined and given a suspended jail sentence by the Court of Special Sessions of the City of New York. Six of such counts charged him with violating section 439 with respect to the receipt in 1959 of six payments from the petitioner totaling $4,850. Small was also subsequently indicted under a 68-count indictment filed December 16, 1960, charging him with violations of section 439 occurring in 1958 and 1959, and five of such counts charged him with violating that section with respect to the receipt in 1959 of five payments from the petitioner totaling $150. Disc jockeys Jack Walker and Alan Freed were also indicted for violations of section 439 occurring in 1958 and 1959, but neither was charged with receiving payments from the petitioner herein. Both pleaded guilty. Freed was fined and given a suspended sentence and Walker was given a suspended sentence.

In its returns for the taxable years involved the petitioner claimed deductions with respect to the amounts set forth hereinabove as follows:

|  | 1958 | 1959 | 1960 |
|---|---|---|---|
| Sales commissions | $5,001.34 | $17,007.26 | ------- |
| Copyrights and artists' royalties | 1,688.62 | ---------- | ------- |
| Salesmen paid | ---------- | ---------- | $2,800 |
| Gifts and theatre expense | ---------- | ---------- | 500 |
| Total | [1] 6,689.96 | 17,007.26 | 3,300 |

[1] This amount includes an amount of $1,456.34 which was accrued in 1958 but paid in 1959.

In the notice of deficiency the respondent disallowed all of the claimed amounts, stating that they were not properly deductible under section 162 or any other section of the Internal Revenue Code of 1954.

[2] Sec. 439. Corrupt influencing of agents, employees or servants

1. A person who gives, offers or promises to an agent, employee or servant of another, any gift or gratuity whatever, without the knowledge and consent of the principal, employer or master of such agent, employee or servant, with intent to influence such agent's employee's or servant's action in relation to his principal's, employer's or master's business; or an agent, employee or servant who without the knowledge and consent of his principal, employer or master, requests or accepts a gift or gratuity or a promise to make a gift or to do an act beneficial to himself or to another, under an agreement or with an understanding that he shall act in any particular manner in relation to his principal's, employer's or master's business, or receives a reward for having so acted; * * * is guilty of a misdemeanor and shall be punished by a fine of not more than five hundred dollars, or by imprisonment for not more than one year, or by both such fine and imprisonment.

## OPINION

We have found as a fact that for the taxable year 1960 the petitioner paid an amount of $3,300 to promotion men, not connected with any radio station, for promotion work in connection with the sale of its records. On brief the respondent now concedes that this amount, which is the amount claimed by petitioner, in its return, is allowable as a deduction under section 162 of the Internal Revenue Code of 1954.[3] Of the deductions claimed by the petitioner for the taxable period ended December 31, 1958, and for the taxable year 1959 (a total of $23,697.22), we have found as a fact that $3,588.87 consisted of payments to promotion men not connected with any radio station, writers and a pianist, and a small amount for travel expenses. On brief the respondent concedes the deductibility of such payments in substantially this same amount. In the recomputation under Rule 50 the petitioner will be allowed a deduction of $3,588.87. In addition, the respondent has conceded that the petitioner is entitled to the deduction of $1,338.62 for 1958 on account of copyright and artists' royalties.

We have found as a fact that the remaining $18,769.73 of the disallowed deductions for 1958 and 1959 consisted of payments to disc jockeys and other employees of various radio stations for the purpose of influencing such individuals to give preference to the playing of petitioner's records. On brief the petitioner concedes that this amount or substantially this amount was paid to disc jockeys or other employees of radio stations.

The petitioner contends that the practice of making so-called payola payments had been common practice in the industry for many years; that a company which failed to make such payments would not have its records played and would thus be at a disadvantage as compared with a company which did make such payments; and that if the records were not played the likelihood was that they would not be sold to the general public. This was the general effect of the testimony of the petitioner's president, George Paxton. The petitioner therefore contends that such payments constituted ordinary and necessary business expenses within the contemplation of section 162(a) of the Code. The respondent, on the other hand, contends that such payments were made in contravention of section 439 of the Penal Law of the State of New York; that the allowance of such payments as deductions would frustrate the sharply defined public policy of the State of New York; and that, therefore, such payments are not deductible under section 162(a) of the Code.

---

[3] Sec. 162(a) provides in part:

IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *

In *Tank Truck Rentals, Inc.* v. *Commissioner*, 356 U.S. 30, the Supreme Court, after reviewing a number of its prior decisions, pointed out that deductibility is limited to expenses that are ordinary and necessary to carrying on the taxpayer's business, and that a finding of "necessity" cannot be made if allowance of the deduction would frustrate sharply defined national or State policies proscribing particular types of conduct evidenced by some governmental declaration thereof. In that case it was held that fines paid to States for violation of their statutes providing for weight limits of trucks driven on their highways, do not constitute ordinary and necessary business expenses within the meaning of the Internal Revenue Code, even though it was shown that the taxpayer could not operate profitably if it observed such laws. The Court stated in part:

Petitioner's failure to comply with the state laws obviously was based on a balancing of the cost of compliance against the chance of detection. Such a course cannot be sanctioned, for judicial deference to state action requires, whenever possible, that a State not be thwarted in its policy. We will not presume that the Congress, in allowing deductions for income tax purposes, intended to encourage a business enterprise to violate the declared policy of a State. * * *

* * * Although each case must turn on its own facts, *Jerry Rossman Corp.* v. *Commissioner*, [2 Cir.] 175 F. 2d 711, 713, the test of nondeductibility always is the severity and immediacy of the frustration resulting from allowance of the deduction. The flexibility of such a standard is necessary if we are to accommodate both the congressional intent to tax only net income, and the presumption against congressional intent to encourage violation of declared public policy.

Certainly the frustration of state policy is most complete and direct when the expenditure for which deduction is sought is itself prohibited by statute. See *Boyle, Flagg & Seaman, Inc.*, v. *Commissioner*, 25 T.C. 43. If the expenditure is not itself an illegal act, but rather the payment of a penalty imposed by the State because of such an act, as in the present case, the frustration attendant upon deduction would be only slightly less remote, and would clearly fall within the line of disallowance. * * *

In *Boyle, Flagg & Seaman, Inc.*, 25 T.C. 43, we held that payments prohibited by the insurance laws of the State of Illinois, made by the taxpayer to nonlicensed automobile dealers and others for soliciting insurance for it, did not constitute ordinary and necessary business expenses. We there pointed out that even though the payments were "ordinary" in the sense that it was the common practice of Illinois insurance brokers to make such payments, and that even though they may have been thought to be "necessary" in the sense that automobile dealers might not have referred their insurance business to the taxpayer unless it made such payments, the payments were not deductible since expenditures which violate Federal or State law do not qualify as ordinary and necessary business expenses under the Internal Revenue Code.

It is our conclusion that the payments which the petitioner made to disc jockeys and other radio station personnel are not deductible.

To allow the deduction of such amounts would, in our opinion, frustrate the policy of the State of New York as defined in section 439 of the Penal Law of the State of New York. That section, quoted hereinabove, provides that a person who gives to an employee of another any gift or gratuity, without the knowledge and consent of the employer, with intent to influence such employee's action in relation to his employer's business, is guilty of a misdemeanor and shall be punished by fine or imprisonment or both. There can be no question, we think, that the payments were made by the petitioner with intent to influence the recipients' actions in relation to their employers' businesses. The evidence clearly establishes that the petitioner did not advise such employers of the payments and obtain their consent thereto. The petitioner contends that since the practice of making payments to disc jockeys and other radio station personnel was a common practice in the industry, in fact so prevalent as to result in congressional hearings upon the subject, it should be concluded that the employers had knowledge of the payments involved herein and that they impliedly consented thereto by failing to make any objection.[4] It contends, therefore, that we should hold that there was no violation of section 439 of the Penal Law of the State of New York and that the allowance of the payments as deductions would not frustrate any policy of the State of New York. However, even though the making of such payments was a common practice, we think that such fact does not establish that the particular payments here involved were made with the knowledge and consent of the employers of the recipients.

In *Dixie Machine Welding & Metal Works, Inv.* v. *United States* (C.A. 5), 315 F. 2d 439, certiorari denied 373 U.S. 950, it was held that payments made by the taxpayer, which operated a ship repair yard, to captains and chief engineers of foreign vessels to obtain business were not deductible as ordinary and necessary business expenses, since such payments were in violation of the Louisiana Commercial Bribery Statute, which corresponds closely to section 439 of the Penal Law of the State of New York. There the taxpayer's only reliance for proof of knowledge and consent of the employers of recipients of payments was upon an alleged universal custom, known to the shipowners, of making such payments. There the trial court had found that the taxpayer had not established by a preponderance of the evidence that the practice was universal or known to the owners of the ships repaired by the taxpayer; that indeed there was evidence to the contrary showing that the shipowners doing business with the taxpayer were not aware of the kickbacks. In affirming the lower court, the Court of Appeals

---

[4] The petitioner's president testified, in effect, that because it would have been uncommon for a person in the industry not to make such payments, and the fact that such payments were widely discussed, he assumed that the employers of the individuals to whom the petitioner made payments knew of the payments.

stated that the statute outlawed such payments unless they were accompanied by both the knowledge and consent of the employer, and that since the taxpayer's sole reliance for proof of both knowledge and consent was an alleged universal custom known to the owners, and the proof failed to establish that the custom was universal or that it was known to the owners, then proof of knowledge failed and proof of consent also failed.

We need not here decide whether proof of a universal practice of making payola payments would constitute proof of knowledge and consent within the meaning of section 439 of the Penal Law of the State of New York. Here, as in the *Dixie Machine* case, we do not have proof of such a universal practice.

On brief the petitioner states that, although one of the disc jockeys to whom it made payments was convicted of violations of section 439 on account of receipt of payments from the petitioner, such conviction resulted from a plea of guilty rather than a trial and that the petitioner itself was never indicted or prosecuted for violation of that statute, and in effect contends that therefore it is not within the province of this Court to conclude that the making of the payments by the petitioner violated section 439. We do not agree. Since, as pointed out above, the allowance of a deduction depends upon whether such allowance would violate a sharply defined policy of a State, it is incumbent upon us, when the question is presented, to determine whether the payment involved contravened a State statute, even though there has not been a determination by any State court or other authority with respect to that question. In this connection it may be observed that the payments involved in the *Dixie Machine* case were found to be in violation of the Louisiana statute, even though there apparently was no adjudication by any State court or authority that the particular payments violated the State statute.

*Decision will be entered under Rule 50.*