MICKEY L. AND VIRGINIA L. WORDEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Worden v. Commissioner
Docket No. 34033-87
United States Tax Court
T.C. Memo 1992-447; 1992 Tax Ct. Memo LEXIS 473; 64 T.C.M. (CCH) 408; August 10, 1992, Filed As Corrected August 17, 1992. Decision will be entered for respondent. For Mickey L. Worden, pro se. For Respondent: Donald E. Edwards. WHALEN
WHALEN
MEMORANDUM FINDINGS OF FACT AND OPINION WHALEN, Judge: Respondent determined the following deficiency in, and additions to, petitioners' 1982 Federal income tax: Additions to Tax
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
50% of interest on
$ 11,336.28
$ 566.81
$ 11,336.28
All section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue, unless otherwise indicated. The issues for decision are: (1) Whether petitioners understated the commission income which Mr. Worden realized in 1982 from the sale of life insurance policies; (2) if so, whether the understated commission income is deductible under section 162(a), or whether it is not deductible because it constitutes an "other illegal payment" within the meaning of section 162(c)(2); and, (3) whether petitioners are liable for additions to tax under section 6653(a)(1) and (2). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The Stipulation of Facts filed by the parties and the exhibits attached thereto *474 are incorporated herein by this reference. Petitioners are husband and wife. They resided at Edmund, Oklahoma at the time they filed the subject petition. In this opinion, we sometimes refer to Mr. Worden as petitioner. In 1982, petitioner was an insurance agent licensed by the State of Oklahoma. He owned and operated Oak Tree Insurance Agency, Inc. (Oak Tree), a corporation principally engaged in selling property and casualty insurance. In addition to operating Oak Tree, petitioner occasionally sold life insurance policies underwritten by the Federal Home Life Insurance Co. (Federal Home Life). He computed the income and expenses from that business using the cash receipts and disbursements method of accounting. During 1982, Federal Home Life paid two types of commissions to its agents. It paid a "basic commission" computed as a percentage of the first year's premium on each life insurance policy sold by the agent, and it paid an "override commission" computed as a percentage of the basic commission. The company would pay the basic commission to the agent after it received the customer's application and payment of the first year's premium. The company would pay the override *475 commission to the agent sometime later. Federal Home Life permitted some agents, including petitioner, to offset the first year's premium by the basic commission to which the agent would be entitled, assuming the customer's application were approved. These agents were expected to collect the first year's premium from the customer but were required to remit only the "net premium" to the company. In this opinion, we use the term "net premium" to mean the first year's premium less the basic commission. Federal Home Life would issue the policy to the customer and pay the "override commission" to the agent after it received the customer's application and payment of the net premium. During 1982, petitioner sold approximately six or seven life insurance policies written by Federal Home Life. In each case, his customer had already purchased property or casualty insurance from Oak Tree. Petitioner sold life insurance merely as a service to the property and casualty insurance customers of Oak Tree. His purpose in making the sales was not to make a large profit, but to maintain Oak Tree's property and casualty insurance business. If a prospective customer was interested only in life *476 insurance, petitioner would refer the customer to some other agent. For each of the life insurance policies which petitioner sold during 1982, he entered into a so-called "insurance consulting agreement" with the customer. All of the consulting agreements were the same, in substance, as the following consulting agreement with TWF Land Development, Ltd.: The undersigned hereby engages Mickey L. Worden, a licensed insurance agent, as a consultant under the laws of the State of Oklahoma (36 O.S. 1427(1981)), to offer the undersigned the most reasonable life insurance rates available after searching the market and within the requirements set forth by TWF Land Development, Ltd., in return for a fee of $ 2,560. It is also to be understood that the purchase of a policy is not a condition of this agreement, but that should the undersigned feel that it is necessary to purchase insurance after the consultation, then the fee as stated herein may be reconsidered in compliance with 36 O.S.S [sic] 1427(I)(1981). Agreed to this 13th day of December, 1982. The fee stipulated by petitioner in each of the consulting agreements was equivalent to the net premium for *477 the life insurance policy which he sold to the customer. In each case, petitioner collected the consulting fee from his customer and deposited it in his business bank account. He then issued a check in the same amount to Federal Home Life for the net premium under the policy. Petitioner did not collect the remainder of the first year's premium from any of his customers. That is, he did not charge any of his customers more than the net premium. Upon receipt of the net premium from petitioner, Federal Home Life issued a policy to the customer and paid the override commission to petitioner. In effect, petitioner gave each of his life insurance customers a discount of the first year's premium in the amount of the basic commission to which he was entitled upon the sale of the policy. On their 1982 tax return, petitioners included in gross income only the override commissions received from Federal Home Life. They did not include the basic commission which Mr. Worden failed to collect from his customers. Attached to petitioners' 1982 Federal income tax return is a Schedule C, Profit (or Loss) from Business or Profession, which purports to report the income and deductions from Mr. *478 Worden's life insurance sales business. On that Schedule C, petitioners reported "total income" from the business in the amount of $ 26,120.43. They did not specify "gross receipts or sales" or "cost of goods sold", as called for by the form. They reported the same amount, $ 26,120.43, as "net profit or (loss)" from the business. They stated that "total deductions" from the business was "None". The principal adjustment made by respondent in the notice of deficiency is to increase petitioner's net profit from his life insurance sales business by $ 33,452.37. The explanation of adjustments attached to the notice of deficiency states: "your Schedule C total income is $ 59,572.80, * * * instead of $ 26,120.43 total income and net profit shown on your return." Respondent made the above adjustment to petitioners' tax after two companies filed information reports with the Internal Revenue Service. Those reports disclosed that during 1982 each company paid nonemployee compensation to petitioner in excess of the amount which was included for that company in the total reported on petitioners' Schedule C. The amounts reported by petitioners on Schedule C, the increases determined by *479 respondent, and the adjusted income determined by respondent are as follows: Amount
Adjusted
Payor
Reported
Increase
Amount
Harris Reality
$  1,283.60
$       0.00
$  1,283.60
Adeline Insurance
398.92
0.00
398.92
Administrative
Concepts
1,458.97
693.03
2,152.00
United Fire
180.04
0.00
180.04
Tiger Heating
5,148.15
0.00
5,148.15
Federal Home Life
17,650.75
32,759.34
50,410.09
$ 26,120.43
$ 33,452.37
$ 59,572.80
As a consequence of the above increase in petitioners' income, respondent also increased petitioners' deduction for general sales tax by $ 120. Based upon the above adjustments, the "statement of income tax changes", a document attached to the notice of deficiency, computes a tax deficiency of $ 11,297.28 in petitioners' 1982 tax. The notice of deficiency, however, states that the deficiency is $ 11,336.28. The record does not explain the $ 39 difference between these two amounts nor does petitioner complain about it. At trial, petitioners introduced into evidence a copy of a letter dated February 3, 1984, which Mr. Worden sent to Mr. Ron Kreiter, Assistant General Counsel of the Oklahoma State Insurance Commissioner's office. *480 The date of the letter is after the date on which an agent of the Internal Revenue Service contacted petitioners concerning their tax liabilities for earlier taxable years. Petitioner wrote the following to Mr. Kreiter: On Monday, January 23, 1984, I contacted you in regard to my work as an insurance consultant since 1979. As I told you, I am a licensed insurance agent under the law of the State of Oklahoma. Further, as I advised, I have been consulting with individuals for a fee and have not collected from them the commission of any insurance policy if the individual placed the same through me. Further, you stated that if I would write this letter to you and advise you of my circumstances as set forth above, that you would provide a letter to me stating that my actions would not be considered illegal or a violation of the insurance laws of Oklahoma by the Insurance Commissioner's office. Would you please send to me such a written opinion in order to protect myself. Petitioners also introduced two letters purportedly written by Mr. Kreiter. The body of the first letter, dated February 7, 1984, states as follows: Dear Mr. Worden: The exemption provided for duly licensed *481 insurance agents under the insurance consultants statute, permits an insurance agent to act as a consultant with only two requirements. Those requirements are, that in advance of rendering service as a consultant, a written agreement is to be presented and signed by the agent and client. The agreement is to outline nature [sic] of the work to be performed and state the fee for the work. The other requirement is that the agent serve the insurance needs and interests of the client to the best of his ability. It would appear that you have thus far complied. We hope this will answer your inquiry. Please feel free to contact us if you desire further assistance. The body second letter from Mr. Kreiter, dated March 14, 1984, states as follows: Dear Mr. Worden: Thank you for your questions in our meeting of February 7, 1984. We do have a rebating statute which is a general statute contained in the Unfair Claims Practices Act of the Insurance Code36 O.S. 1981, § 1201 et. [sic] seq. and more specifically 36 O.S. 1981, § 1204. However statute 36 O.S. Supp. 1983, § 1427, which relates specifically to insurance consultants, *482 permits a licensed insurance agent or surplus lines insurance broker who acts as an insurance consultant to offset in whole or in part the fee which he charges as an insurance consultant by compensation for acting as an agent or broker. The exact language is stated as follows:
"However, nothing in this title shall prohibit the offset, in whole or in part, of the fee payable pursuant to the provisions of subsection C of this section by compensation otherwise payable to said duly licensed insurance agent or surplus lines insurance broker for acting as an agent or broker." This section would more aptly fit your situation. The courts have ruled numerous times that in statutory intent the specific statute will control over the general statute and that a later intent of the Legislature is also exhibited in this statute. We hope this will answer your questions. Significantly, petitioners did not call Mr. Kreiter to testify as a witness at trial. Petitioner received a memorandum from the Executive Director of the Oklahoma Association of Professional Insurance Agents, Inc. which states that, "according to Oklahoma Law", a licensed insurance agent can "serve as a consultant to *483 his client or prospective client and charge a fee". The memorandum sets forth six guidelines under which this can be done. The last guideline states as follows: 6. If the agent has a signed consulting agreement and keeps it on file he will protect himself from rebating. Especially if he returns part or all of the consulting fee against the charge of the policy. The record does not reveal the date on which the memorandum was written or the date on which petitioner received it. On January 26, 1987, petitioner filed a petition in the District Court for Oklahoma County, Oklahoma, in which he named the Insurance Department of the State of Oklahoma and the State Insurance Commissioner as defendants and he asked the court to declare the Oklahoma anti-rebate statute, Okla. Stat. tit. 36, sec. 1204.8 (1981), to be in violation of the Oklahoma Constitution and to enjoin "defendants from enforcing the provisions of Oklahoma Statutes Title 36 Okla. Stat. § 1204 and 1205". The petition contains the following allegations in support thereof: 7. Because the premium on life insurance is paid direct to the life insurance company, the only way for an insurance agent to reduce the price *484 he charges for his services is to return a portion of his commission to his customers, who will thus end up paying a smaller total premium than at present. 8. The sole impediments to this benefit to consumers are the anti-rebating sections of Title 36 Oklahoma§ 1204 * * * * * * * 11. The prohibition in rebating imposed by Section [sic] 36 Oklahoma Statute 1204 § (8)(a) [sic] and Section [sic] 36 Oklahoma Statute § 1205has been and continues to be enforced by defendants. It has caused and will continue to cause economic harm to consumers of Oklahoma County and of Oklahoma be [sic] preventing price competition in insurance agents' commissions. [Emphasis supplied.] The Court dismissed petitioner's suit several months later because he failed to respond to defendants' motion to dismiss. The Insurance Department of the State of Oklahoma actively enforces the Oklahoma anti-rebate statute, Okla. Stat. tit. 36, sec. 1204.8 (1981). At the time of trial, the department was investigating two insurance agents, one of whom was petitioner, for violations of the Oklahoma anti-rebate statute. A violation of the statute can lead to permanent revocation of an agent's license. *485 OPINION Respondent determined that the net profit from petitioner's insurance sales business was $ 33,452.37 more than the amount which petitioners reported on Schedule C of their joint 1982 return. The first issue for decision is whether petitioners are subject to tax on the additional commission income determined by respondent. Petitioners bear the burden of disproving respondent's determination. Rule 142(a), Tax Court Rules of Practice and Procedure.
Respondent's determination is based upon information reports filed by two companies with the Internal Revenue Service. The first company, Administrative Concepts, reported paying nonemployee compensation to petitioner in the amount of $ 2,152, or $ 693.03 more than the amount reported on petitioners' Schedule C. The record does not disclose the reason for the difference. Petitioners offered no evidence in support of the lower amount they reported and, accordingly, we sustain respondent's determination that petitioners are required to include in their 1982 gross income additional nonemployee compensation from Administrative Concepts in the amount of $ 693.03. The second company, Federal Home Life, reported paying nonemployee *486 compensation to petitioner in the amount of $ 50,410.09, that is, $ 32,759.34 more than the amount reported on petitioners' Schedule C. Petitioners claim that they included in income the commissions which they received from Federal Home Life, $ 17,650.75. They argue that they are not subject to tax on the amount of the commissions which Mr. Worden did not collect from his customers during 1982. We disagree. In deciding this case, we are bound by our opinion in Alex v. Commissioner, 70 T.C. 322, 326 (1978), affd. 628 F.2d 1222 (9th Cir. 1980). The taxpayer in that case, like petitioner here, was engaged in the business of selling life insurance. He devised several schemes to allow prospective customers to purchase a life insurance policy which would stay in force for 2 years, with no cash outlay required. One of the schemes used by the taxpayer in that case, the "discount scheme", is similar to the method used by petitioner in this case to sell life insurance policies. In Alex, each of the policies used in the discount scheme had a substantial cash value during the first year it was in effect and entitled the taxpayer, an insurance agent, *487 to receive a commission of 75 percent of the first year's premium. As we described the discount scheme in that case, the taxpayer "reduced the premium payable on the policy by the sum of the cash value and commission payable to him and submitted the difference (a small percentage of the premium) to Jefferson", the insurance company. Alex v. Commissioner, supra at 323. The issue in Alex is the same as the issue in this case, whether the insurance agent is subject to tax on the full amount of the insurance commissions which he earned or whether the rebate paid or the discount given by the agent constitutes a downward adjustment to the agent's gross income on the theory that it represents an adjustment to the purchase price. In Alex, we overruled Schiffman v. Commissioner, 47 T.C. 537 (1967), and held that section 61(a) requires the agent to include in gross income the full amount of commissions which he earned for his services and which he was entitled to receive under his contract with the insurance company. In arriving at that holding, we noted that it is the insurance company which is the seller of the policy, not the agent. *488 Accordingly, the rebates paid and discounts given by an insurance agent to his customers cannot be adjustments to the selling price as would entitle the agent to exclude the amount from gross income. Cf. Max Sobel Wholesale Liquors v. Commissioner, 69 T.C. 477 (1977), affd. 630 F.2d 670 (9th Cir. 1980); Atzingen-Whitehouse Dairy, Inc. v. Commissioner, 36 T.C. 173 (1961); Pittsburgh Milk Co. v. Commissioner, 26 T.C. 707 (1956). Like the discount scheme used by the taxpayer in Alex, petitioner in this case reduced the first year's premium by the amount of the basic commission payable to him. He collected only the net amount from his customer, rather than the full premium, and remitted that amount to Federal Home Life. In effect, he discounted the first year's premium by the amount of the basic commission. Petitioners argue that these premium discounts are excludable from their income and they cite Schiffman v. Commissioner, supra, the case we overruled in Alex, as authority for their argument. However, they advance nothing to suggest that our opinion in Alex v. Commissioner, supra, *489 is wrong, or to cause us to revisit our analysis in that case. We adhere to our opinion in Alex. Accordingly, we sustain respondent's determination in this case that petitioners are required to include in their 1982 gross income additional commissions from Federal Home Life in the amount of $ 32,759.34. The second issue for decision is whether the premium discounts which petitioner gave to his life insurance customers during 1982 are deductible under section 162(a) or whether they are "other illegal payments" within the meaning of section 162(c)(2). Section 162(a) allows as a deduction "all the ordinary and necessary expenses paid or incurred * * * in carrying on any trade or business". At the outset, we note petitioner's testimony that he sold the subject life insurance policies as a service to persons who had already purchased property and casualty insurance from Oak Tree. Petitioner stated that he considered the subject life insurance sales "as a loss leader in our agency". He also testified that he sold the subject life insurance policies "to maintain accounts -- our casualty accounts". Petitioner's testimony, therefore, suggests that he gave customers of Oak Tree *490 a discount on their life insurance premiums in order to maintain Oak Tree's property and casualty insurance business. If the premium discounts given by petitioner during 1982 were intended to maintain Oak Tree's property and casualty insurance business, rather than petitioner's life insurance business, as suggested by petitioner's testimony, then it is by no means clear that they are "ordinary and necessary expenses" of petitioner's life insurance business. See Deputy v. du Pont, 308 U.S. 488 (1940); Kaplan v. Commissioner, 21 T.C. 134, 145-146 (1953). Respondent, however, does not address this issue and, accordingly, neither shall we. Respondent's position that the subject premium discounts are not deductible is based upon the contention that they are "other illegal payments" described by section 162(c)(2). That provision disallows a deduction for any payment if it constitutes: an illegal bribe, illegal kickback, or other illegal payment * * * under any law of a State (but only if such State law is generally enforced), which subjects the payor to a criminal penalty or the loss of license or privilege to engage in a trade or business. *491 * * * Section 162(c)(2) imposes on respondent the burden of proving, by clear and convincing evidence, that a payment constitutes an illegal payment under State law. Sec. 162(c)(2); sec. 1.162-18(b)(4), Income Tax Regs.; see Rule 142(b), Tax Court Rules of Practice and Procedure.
In this case, respondent has shown that, during 1982, it was unlawful under Oklahoma law for an insurance agent to engage in an unfair method of competition or an unfair or deceptive act or practice in the business of insurance. Okla. Stat. tit. 36, sec. 1203 (1981). One such act or practice involved paying or allowing a rebate of insurance premiums or giving any special favor, as inducement to purchase an insurance contract. Okla. Stat. tit. 36, sec. 1204.8 (1981). The Oklahoma statute provides as follows: § 1204. Unfair methods of competition and unfair or deceptive acts or practices defined The following are hereby defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance: * * * 8. Rebates. (a) * * * paying or allowing, or giving or offering to pay, allow or give, directly or indirectly, as inducement to any contract of insurance, *492 any rebate of premiums payable on the contract, or any special favor or advantage in the dividends or other benefits thereon, or any valuable consideration or inducement whatever not specified in the contract * * * [Emphasis supplied.] We sometimes refer to the above provision, Okla. Stat. tit. 36, section 1204.8 (1981), as the Oklahoma anti-rebate statute. Under the Oklahoma law, the commission of any unfair or deceptive act or practice in the business of insurance, including the payment or allowance of a rebate, in violation of the Oklahoma anti-rebate statute, is a misdemeanor and is punishable as such. Id. sec. 117. It can also lead to revocation by the State Insurance Department of the payor's license to sell insurance. Id. sec. 1428. Respondent has also proven, as required by section 162(c)(2), that the Oklahoma anti-rebate statute is "generally enforced." See generally Boucher v. Commissioner, 77 T.C. 214 (1981), affd. 693 F.2d 98 (9th Cir. 1982). In defining the term generally enforced, the regulations promulgated under section 162(c)(2) state as follows: For purposes of this paragraph, a State law shall be considered *493 to be generally enforced unless it is never enforced or the only persons normally charged with violations thereof in the State (or the District of Columbia) enacting the law are infamous or those whose violations are extraordinarily flagrant. For example, a criminal statute of a State shall be considered to be generally enforced unless violations of the statute which are brought to the attention of appropriate enforcement authorities do not result in any enforcement action in the absence of unusual circumstances. Sec. 1.162-18(b)(3), Income Tax Regs.
At trial, respondent introduced the testimony of Ms. Ricki Lamb, Assistant General Counsel of the Oklahoma State Insurance Department. The Oklahoma State Insurance Department is the agency charged with responsibility for the enforcement of the OklahomaInsurance Code. See Okla. Stat. tit. 36, secs. 301, 302 (1981). It has the power to examine and investigate possible violations of the Insurance Code. Id.sec. 1205. Ms. Lamb testified that the anti-rebate statute is generally enforced in Oklahoma. She testified that the Department does not have a "tolerance policy" as to violations of the Oklahoma anti-rebate statute. She *494 also testified that although it is difficult to gather information about insurance rebate schemes because the parties involved generally hide their conduct, once a rebate scheme is brought to the attention of the State Insurance Department, it has no choice but to initiate an investigation. In fact, at the time of the trial, Ms. Lamb was conducting an investigation of petitioner and another insurance agent, both for possible violation of the Oklahoma anti-rebate statute. Respondent's position that the Oklahoma anti-rebate statute is "generally enforced" is also supported by petitioner's allegation in a prior law suit which he filed in State court seeking to enjoin the State Insurance Department from enforcing the anti-rebate statute. In support of that relief, petitioner alleged the following in the State court action: 11. The prohibition on rebating imposed by Section [sic] 36 Oklahoma Statute 1204 § (8)(1) and Section [sic] 36 Oklahoma Statute § 1205has been and continues to be enforced by defendants. It has caused and will continue to cause economic harm to the consumers of Oklahoma County and of Oklahoma be [sic] preventing price competition in insurance agents' commissions. *495 [Emphasis supplied.] Furthermore, petitioner introduced into evidence in this case a memorandum issued by the Oklahoma Association of Professional Insurance Agents, Inc. to its members in which the executive director of the association suggests that an insurance agent take certain actions to "protect himself from rebating". That memorandum is further evidence that the Oklahoma anti-rebate statute is "generally enforced". Finally, respondent has proven that the premium discounts which petitioner gave during 1982 to his life insurance customers are rebates within the meaning of that term in section 1204.8, Okla. Stat. tit. 36 (1981). The fundamental nature of an unlawful rebate under the Oklahoma statute is the sale of an insurance contract for less than payment of the full premium established by the insurance company. In this case, petitioner charged each of his customers a consulting fee equal to the net premium. Thus, each customer paid less than the first year's premium for the policy, and received a discount or rebate in violation of the Oklahoma anti-rebate statute. Ms. Lamb testified that she considered petitioner's activities in giving such premium discounts to his *496 life insurance customers to be in violation of the Oklahoma anti-rebate statute. She also testified that Mr. Worden was under investigation by the State Insurance Department and faced possible revocation of his license as an insurance agent. In their post-trial briefs, petitioners do not deny that Oklahoma law prohibits an insurance agent from giving a rebate, nor do they deny that the Oklahoma anti-rebate statute subjects the payor to criminal penalty or loss of license, nor do they deny that the statute is generally enforced. Petitioners' principal argument is that the Oklahoma anti-rebate statute does not apply to petitioner's sales of life insurance during 1982. According to petitioners, Mr. Worden functioned as an "insurance consultant" when he sold the subject life insurance policies. Petitioners' contention seems to be that under Oklahoma law an insurance agent is not subject to the anti-rebate statute in connection with the sale of an insurance policy if the agent is acting as an insurance consultant. We disagree. The term "insurance consultant" is defined by the OklahomaInsurance Code, Okla. Stat. tit. 36, section 1422.2 (1981), as follows: "Insurance consultant" *497 means an individual, partnership or corporation who, for a fee, holds himself or itself out to the public as engaged in the business of offering any advice, counsel, opinion or service with respect to the benefits, advantages or disadvantages promised under any policy of insurance that could be issued or delivered in this state; The activities of an insurance consultant are governed by the OklahomaInsurance Code, Okla. Stat. tit. 36, section 1427 (1981), which provides, in part, as follows: § 1427. Insurance consultant's license; exemptions; application; examination and investigation; work agreements; persons eligible; term; denial, revocation or suspension; client loyalty; reciprocity A. No person shall act as, or hold himself out to be, an insurance consultant until a license as an insurance consultant has been issued to him by the Commissioner. However, no insurance consultant's license shall be required of the following: * * * 2. A duly licensed insurance agent or surplus lines insurance broker; or * * * C. In advance of rendering any service as an insurance consultant as defined in the provisions of Section 1422 of this title, a written agreement on a form approved by the Commissioner shall be prepared by the consultant, and shall be signed by both the consultant and the client. The agreement shall outline the nature of the work to be performed by the consultant and shall state his fee for the work. The consultant shall retain a copy of the agreement for not less than three (3) years after completion of the services and shall make said copy available to the Insurance Commissioner upon request by the Insurance Commissioner. *498 * * * G. All requirements and standards relating to the denial, revocation, or suspension of an insurance agent's license, including penalties, shall apply to the denial, revocation, and suspension of an insurance consultant's license to the extent practicable. H. A consultant is obligated by the terms of his license, to serve with objectivity and complete loyalty the interests of his client alone; and render to his client such information, counsel, and service as, within the knowledge, understanding, and opinion, in good faith, of the licensee, best serves the client's insurance needs and interests. I. A duly licensed insurance agent or surplus lines insurance broker who acts as, or holds himself out to be, an insurance consultant pursuant to the exemption from licensing as a consultant contained in the provisions of subsection A of this section shall nonetheless be subject to the provisions of subsections C and H of this section. However, nothing in this title shall prohibit the offset, in whole or in part, of the fee payable pursuant to the provisions of subsection C of this section by compensation otherwise payable to said duly licensed insurance agent or surplus lines insurance broker for acting as an agent or broker. *499 * * * Mr. Worden was not licensed as an insurance consultant during 1982. Nevertheless, the above statute authorizes "a duly licensed insurance agent", like petitioner, to act as an insurance consultant without a separate license. Okla. Stat. tit. 36, secs. 1427.A.2., 1427.D. (1981). There is nothing in the OklahomaInsurance Code which suggests that a person licensed as an insurance consultant or a person licensed as an insurance agent, acting as an insurance consultant, is not subject to the Oklahoma anti-rebate statute. To the contrary, Okla. Stat. tit. 36, section 1428.A.1.h. (1981), suggests the opposite. That provision authorizes the State Insurance *500 Commissioner to censure, suspend, revoke or refuse to issue, continue, or renew any license if "The licensee has been found guilty of any unfair trade practice or fraud". As mentioned above, paying or allowing any rebate of premiums as an inducement to any contract of insurance, as described in the Oklahoma anti-rebate statute, is defined by Okla. Stat. tit. 36, section 1204 (1981), as an unfair or deceptive act or practice in the business of insurance. Petitioners' rely upon two letters written by a former Assistant General Counsel of the State Insurance Commissioner, Mr. Ron C. Kreiter, to establish their position that Mr. Worden is not subject to the Oklahoma rebate statute. Both letters are quoted in full above. They are both general statements of Oklahoma law. Neither letter states that the Oklahoma anti-rebate statute does not apply to an insurance agent who acts as an insurance consultant. Neither letter states that petitioner or any other insurance agent in Oklahoma can lawfully discount the premium cost of a policy by reducing or foregoing entirely his commissions payable upon the sale of the policy. Mr. Kreiter explains in his first letter, dated February 7, 1984, *501 that there are two requirements which must be met for "an insurance agent to act as a consultant". According to the letter, the agent must enter into a written agreement with his client in advance of rendering service as a consultant and the agent must "serve the insurance needs and interests of the client to the best of his ability." The letter states, "it would appear that you have thus far complied" with those requirements but there is no indication from the letter that Mr. Kreiter had been given the facts necessary to make that determination. In any event, the letter says nothing about the Oklahoma anti-rebate statute and it does not support petitioners' contention that Mr. Worden was not subject to the anti-rebate statute in 1982. Mr. Kreiter's second letter, dated March 14, 1984, does refer to the Oklahoma anti-rebate statute. The letter also makes reference to Okla. Stat. tit. 36, section 1427.I. (1981), quoted above, a provision which deals with an insurance agent "who acts as, or holds himself out to be, an insurance consultant". However, Mr. Kreiter's letter is only a general statement of Okla. Stat. tit. 36, section 1427.I. (1981). It contains no discussion of the *502 facts relating to Mr. Worden's sale of life insurance policies during 1982. The letter does not state that an insurance agent who qualifies as in insurance consultant under Okla. Stat. tit. 36, section 1427 (1981), is not subject to the Oklahoma anti-rebate statute. Also, the letter does not state that an insurance agent is free to substitute a consulting fee for the policy premium established by the insurance company. We note that Okla. Stat. tit. 36, section 1427.I. (1981), allows "the offset, in whole or in part, of the [consulting] fee * * * by compensation otherwise payable to" the agent (emphasis supplied). In effect, it allows the agent to forego his consulting fee, if that fee is offset, in whole or in part, by commissions payable to the agent for his services as an agent. It does not authorize the reverse; it does not authorize the offset of the commissions payable to an agent for his services as an insurance agent by a consulting fee. Otherwise, if it did, an agent could substitute a consulting fee, the amount of which is established by the agent, and, using this simple technique, he could easily circumvent the anti-rebate statute. We do not believe *503 that the Oklahoma legislature intended Okla. Stat. tit. 36, section 1427.I. (1981), to allow the wholesale circumvention of Oklahoma anti-rebate statute and we will not interpret it to bring about that result. Moreover, based upon the facts contained in the record of this case, we cannot find that petitioner, in fact, acted as an insurance consultant in selling the subject life insurance policies in 1982. First, he did not hold himself out to the public as an insurance consultant in advertising or in any other way. He entered into "consulting agreements" only with customers who had already purchased property and casualty insurance from Oak Tree and, when a customer was interested only in life insurance, petitioner referred the customer to another insurance agent. We do not credit petitioner's testimony that during 1982 he received a consulting fee from one person to whom he did not also sell a life insurance policy. Petitioner could not recall the name of the individual and his testimony on that point was vague and unbelievable. Second, there is no evidence that petitioner's activities included "offering any advice, counsel, opinion or service with respect to the benefits, advantages *504 or disadvantages promised under any policy of insurance that could be issued or delivered". Okla. Stat. tit. 36, sec. 1422.2 (1981). There is no evidence that petitioner conducted any research or made a comparison of different life insurance policies offered by different insurance companies. In every instance, he sold the customer a life insurance policy underwritten by Federal Home Life, the insurance company he represented as an agent. Additionally, the consulting fee in every case exactly equalled the net premium for the Federal Home Life policy which he sold to the customer. This fact suggests that before each consulting agreement was signed, petitioner had already agreed to sell his customer a particular Federal Home Life policy. Petitioner testified that he did not place business with other companies "if we were the most competitive market." However, the reason petitioner could offer the "best possible price" from Federal Home Life was because he "waived" his basic commission and collected only "the net result that we would have to remit to the company," i.e., the net premium, instead of the full premium amount. Based on these facts, we do not believe that petitioner's *505 activities constituted insurance consulting as defined in the Oklahoma statute. See id.
Petitioners also argue that the Oklahoma anti-rebate statute is unconstitutional. They seem to contend that the Oklahoma anti-rebate statute cannot lawfully be enforced under the Oklahoma constitution, and thus a violation of the anti-rebate statute falls outside of the scope of section 162(c)(2). As the basis for this argument, they cite Department of Insurance v. Dade County Consumer Advocate's Office, 492 So. 2d 1032, 1033 (Fla. 1986), a case in which the Supreme Court of Florida invalidated the Florida anti-rebate statute. In Department of Insurance v. Dade County Consumer Advocate's Office, supra, the Florida court took the position that there is no legitimate State interest which justified limiting "the bargaining power of the consuming public" by prohibiting an insurance agent from reducing the amount of the commission he or she will earn from selling the insurance. Id. at 1033. The court noted that "Insurance agents' commissions do not affect the net insurance premium and are unrelated to the actuarial soundness *506 of insurance policies." Id. at 1035. Accordingly, the Florida court held that the Florida anti-rebating statute deprived Florida consumers of their property without due process of law in violation of the Florida Constitution. The above opinion of the Supreme Court of Florida is, of course, not binding upon the Oklahoma courts in ruling on whether the Oklahoma anti-rebate statute is valid under the Oklahoma constitution. Similarly, the opinion of the Florida court is not binding on us as we address petitioner's contention that the subject payments are not illegal because of the unconstitutionality of the Oklahoma anti-rebate statute. The same is true of the opinions of the courts in other States which have held other insurance anti-rebate statutes to be constitutional. See People v. Formosa, 131 N.Y. 478, 30 N.E. 492 (1892). The Oklahoma courts have not considered the constitutionality of the Oklahoma anti-rebate statute. Nevertheless, we read the opinions of Oklahoma courts to suggest that, unlike the Florida court in the opinion cited by petitioners, Oklahoma courts are likely to take the position that a rebate of insurance *507 premiums is a form of discrimination which the State has a valid interest in prohibiting. For example, in Mahone v. Hartford Life and Accident Insurance, 561 P.2d 142, 148 (Okla. Ct. App. 1976), the court stated as follows: [2] Essentially this section of the statute [Okla. Stat. tit. 36, section 1204.7, (1971)] prohibits unfair discrimination between individuals of the same class and equal expectation of life. The statute is similar to the anti-discrimination statutes in use in most jurisdictions. Appleman has observed that such statutes are designed to insure that equal terms are fixed in policies to policyholders of like classes. 12 Appleman, supra, § 7017. These statutes prohibit such practices as hidden rebates or preferential treatment with respect to the cost of the policy or the benefits allowed so that all policyholder that fall within the same class will pay alike and will be treated alike. * * * See also American Druggists' Fire Insurance Co. v. State Insurance Board, 184 Okla. 66, 84 P.2d 614 (1938); Metropolitan Life Insurance Co. v. Lillard, 248 P. 841, 845 (Okla. 1926). Accordingly, *508 we do not accept petitioners' contention that the Oklahoma anti-rebate statute is unconstitutional and that it cannot lawfully be enforced against petitioner. The last issue for decision is whether petitioners are liable for additions to tax under section 6653(a)(1) and (2). Respondent determined in the notice of deficiency that the underpayment in petitioners' income tax for 1982, as defined by section 6653(c), was due to negligence or intentional disregard of the rules and regulations. Petitioners bear the burden of disproving respondent's determination. Rule 142(a), Tax Court Rules of Practice and Procedure.
In passing, we note that the letters written by Mr. Kreiter, on which petitioners generally rely, were written in February and March of 1984, after petitioners' 1982 return was filed. Therefore, those letters do not show that petitioners acted reasonably and prudently and exercised due care in filing their 1982 return. See, e.g., Neely v. Commissioner, 85 T.C. 934, 947-948 (1985). Furthermore, we do not credit petitioner's vague testimony about a meeting with representatives of the State Insurance Commissioner in 1978 or 1979 before the 1982 return *509 was filed. In any event, petitioners failed to address this issue at trial. Furthermore, they did not address this issue in their post-trial briefs despite the requirement, set out in our Rules, that all briefs shall contain "A concise statement of the points on which the party relies" and an "argument, which sets forth and discusses the points of law involved and any disputed question of fact." Rule 151(e)(4) and (5), Tax Court Rules of Practice and Procedure. In these circumstances, we conclude that petitioners concede this adjustment and hereby sustain respondent's determination of the subject additions. See Petzoldt v. Commissioner, 92 T.C. 661, 683 (1989); Ireland v. Commissioner, 89 T.C. 978, 979 n.3 (1987). To reflect the foregoing, Decision will be entered for respondent.